BENDER, ADMX., APPELLANT, v. THE NEW YORK CENTRAL
RD. CO., APPELLEE.

[Cite as Bender v. New York Central, 3 Ohio App. 2d 150.]

' (No. 7290—Decided November 12, 1963.)

*Mr. James C. Britt* and *Mr. Willis E. Wolfe, Jr.,* for appellant.

*Messrs. Wilson & Rector* and *Mr. Harrison W. Smith, Jr.,* for appellee.

TROOP, J. This is an appeal on questions of law from a judgment rendered by the Court of Common Pleas of Franklin County. The judgment was entered following the return of a jury verdict in favor of the defendant, the verdict having been directed by the court at the close of all the evidence. The defendant, New York Central Railroad Company, made three motions at the end of all the evidence, two directed to allegations contained in the petition of the plaintiff, Eileen Louise Bender,

administratrix of the estate of Emanuel Bender, deceased, and the third for a directed verdict. The trial court sustained all three motions and directed the verdict in favor of the defendant.

The third motion made was directed to the ordinance of the city of Worthington, No. 54-59, regulating the speed of railroad trains moving within the limits of the city, and set out in plaintiff's petition. It was alleged that the defendant railroad violated the provisions of the ordinance, the violation being a basis of the claimed negligence of the defendant. The trial court sustained the motion striking the pleaded ordinance from the petition of the plaintiff.

There is but one assignment of error claimed in this appeal. Plaintiff, appellant herein, urges that the trial court erred in holding the ordinance of the city of Worthington "unreasonable, unnecessary, discriminating, unconstitutional and invalid," and in striking the pleading of the ordinance from the petition of the plaintiff.

A collision occurred on December 8, 1959, at a grade crossing where the Worthington-Galena Road intersects three railroad tracks, one belonging to the Pennsylvania Railroad Company and two belonging to the defendant, there being some 83 feet between the two sets of tracks. An automobile in which plaintiff's decedent was riding was struck at the crossing by a train operated by the defendant in a southerly direction over its tracks within the city of Worthington. It was alleged in the petition that the train was being operated at a speed of 75 miles per hour and that the speed limit established by the ordinance was 35 miles per hour.

In the answer filed by the defendant, negligence is denied and the invalidity of the ordinance of the city of Worthington is asserted, as well as contributory negligence on the part of the decedent.

We have before us for this review only that part of the bill of exceptions which contains the evidence pertaining to the issue of the validity of the ordinance. It appears to be conceded that the partial bill of exceptions contains all the evidence bearing on the question and that the trial court did conclude that the ordinance was invalid and unconstitutional in its application to the instant case.

The scope of this review is restricted to the resolving of

the single assignment of error upon the limited bill of exceptions as certified and filed.

Plaintiff's exhibit No. 1 is the complete ordinance to which reference is made in the petition, the portion necessary for examination here is Section 1, as follows:

"It shall be unlawful for any railroad company or any other person, firm or corporation or for any agent or employee of any railroad company or of any other person, firm or corporation to operate, run or move any locomotive, engine, car, cars or train upon or along any railroad track within the corporate limits of the city of Worthington, Ohio, at a rate of speed greater than *35* miles per hour."

Authorization for the enactment of an ordinance such as this one is found in Section 723.48, Revised Code, and the provisions of the ordinance as passed by the city of Worthington are in conformity with the statute.

Several basic rules of law have been announced in fairly early decisions of the courts and those rules appear to be the presently applicable ones to the case here reviewed. One of the principal cases is *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Grambo, Admr.* (1921), 103 Ohio St. 471. Paragraph three of the syllabus sets out the starting point in examining the validity of a municipal ordinance regulating the speed of trains, and it reiterates the same basic rule set out in paragraph two of the syllabus in the case of *Blancke, Admx.,* v. *New York Central Rd. Co.* (1921), 103 Ohio St. 178. A federal Court of Appeals adopted the same rule in *Baltimore & O. R. Co.* v. *De Leone* (1923), 289 F. 201.

The language used by the federal court reflects the sense of the proposition announced in the two Ohio cases. It reads as follows:

"A municipal ordinance regulating the speed of trains, enacted under the police power, and which conforms to the limitations prescribed by the Legislature, is presumptively reasonable and valid, and not in conflict with the federal or state Constitution, and while the presumption may be rebutted, in order to overcome it a railroad company must affirmatively show its unreasonableness in its application to the facts in the case."

Following this beginning point, two other propositions

prescribe tests to be applied. A text writer's summary found in 46 Ohio Jurisprudence 2d 281, Section 265, is adequate. It reads as follows:

"* * * To justify declaring invalid an ordinance limiting the speed of trains within a municipality, the railroad company must affirmatively show, by clear and convincing evidence, its unreasonableness, or want of necessity as a police regulation for the protection of life and property. Such an ordinance may also be held invalid as placing an unreasonable burden upon interstate commerce."

The "clear and convincing evidence" rule comes from the *Grambo case, supra,* and from the case of *Toledo, Columbus & Ohio River Rd. Co.* v. *Miller* (1923), 108 Ohio St. 388, which case holds also that the constitutionality of such ordinances "are questions of law for the court to decide." (Paragraph two of the syllabus.)

It was incumbent upon the trial court to determine the reasonableness or unreasonableness of the Worthington ordinance as an exercise of its police power. It was also the prerogative of the court to decide the matter of interference with interstate commerce.

It is well to recall some other fundamental rules with respect to the exercise of the police power by a municipality as we examine the holding of the trial court that the ordinance was invalid, being "unreasonable, unnecessary, discriminatory, unconstitutional." Reference is to the case of *Benjamin* v. *City of Columbus* (1957), 104 Ohio App. 293 (affirmed, 167 Ohio St. 103). This Court of Appeals discusses at length the exercise of the police power by municipalities under Section 3, Article XVIII of the Ohio Constitution. Its opinion is replete with citations of authorities. The case reviewed did not involve an ordinance limiting the speed of trains, but the principles announced by the court are generally applicable. At page 298, this proposition appears, as follows:

"* * * It is not for the courts to determine the wisdom of the legislation, but its constitutional validity, and a court may not substitute its judgment for that of the legislative body as to the necessity for or wisdom of the legislation. * * *""

Further on the page, the language is as follows:

"Furthermore, a court will not substitute its judgment for

the discretion of municipal legislative authorities, who are presumed to be familiar with the local needs and conditions, so long as the provisions do not clearly transcend the limits of reasonableness. * * *''

And finally, the last sentence in paragraph 6 of the syllabus, reflecting the statement of the court at page 302, reads as follows:

''The party asserting unconstitutionality must clearly show it, and if the question is debatable the legislation must be upheld.''

The trial court, in our case, discussed at considerable length the various aspects of the case before it that influenced its conclusion that the Worthington ordinance was unreasonable and invalid. Its comments indicate a study and possible reliance upon the decision reached by another branch of the court in the case of *Banks, Admx.,* v. *Baltimore & Ohio Rd. Co.* (1957), 76 Ohio Law Abs. 83.

Reference to the opinion in the *Banks case, supra,* reveals an excellent review of the case law of Ohio, and of other jurisdictions, by Judge Gessaman. Two basic rules are set out in the headnotes and reflect the statements of the court in the opinion. They are as follows:

''1. The legislative authority of a municipality has the authority under Section 723.48, Revised Code, to regulate the speed of trains through the municipality and such regulations are presumed to be reasonable and valid when they conform to the limitations set forth in said section.

''* * *

''5. The reasonableness of a municipal ordinance while a question of law, depends on the peculiar facts in each case.''

Because of the soundness of the basic conclusions reached in the *Banks case,* such conclusions resulting from the applicable law of Ohio, a comparison of this case with that one seems appropriate. No attempt is made to compare every observation of fact noted by the trial court, but simply to check the more compelling ones.

As in this case, the court found in the *Banks case* that the speed limit imposed by the Columbus ordinance was unreasonable. That ordinance limited passenger trains to eight miles

per hour and freight trains to 12 miles per hour, and was applied at a grade crossing where the speed of motor vehicles was 35 miles per hour. The Worthington ordinance is 35 miles per hour and the speed limit as to motor vehicles is exactly the same at the crossing involved, and even though the trial court observed that a speed of 65 miles per hour is permissible on the expressway, located some distance to the east, it should be noted that expressways are not afflicted with grade crossings.

In this case the railroad crossing was indicated only by marks on the roadway and a typical "cross-buck" sign, while in the Columbus case the crossing was protected by signs, signals, and flasher lights on each side of the crossing, which the court found continued to flash as long as the train was passing and began to flash, at the rate of 22 flashes per minute, when the approaching train was 2,640 feet away in one direction and 3,187 feet away in the other. It should be noted that defendant's witness, Sprunk, as a part of his duties, had recommended, some months before the date of this accident, that more extensive protection be provided at the Worthington crossing.

Visibility at the crossing in the two cases is comparable. It was revealed in the report of a highway department check, testified to by witness, Dannaher, that a driver could see approximately 2,000 feet up the track when approaching from the same direction as decedent's driver. About the same distance prevailed in the Columbus case.

Activity at the crossing is indicated by a figure of 1,383 cars on the day of the highway department check. Sprunk said that he knew school buses used the crossing. Much point is made by the trial court that this crossing is in an outlying, rather sparsely developed, area. It is certainly true that such a location is a factor to be considered by the trial court, but the *Blancke case, supra,* at pages 184 and 185, makes it clear that a finding of unreasonableness is justified only where the crossing is in an outlying section of a municipality "where the public safety is not affected."

In the light of this record, it would appear that the reasonableness of the Worthington ordinance is at least debatable, and being debatable, it must be upheld, the burden being upon the defendant railroad to establish the facts so clearly that the

presumption that the ordinance is a necessary exercise of the police power in the protection of the public is overcome.

While not completely distinct from the safety problem, the interference with interstate commerce is discussed separately. It is observed that in the *Banks case, supra,* Judge Gessaman found that the trains involved made connections with trains to other points and that a reduction in the speed of the trains would necessitate adjustment of schedules and changes in dates. No such serious situation prevails in the instant case. The record indicates that an increase of ten minutes in the running time of the trains would result from an observance of the speed limit. Witness, Sprunk, indicated that the trains connect with others at Cleveland and Cincinnati, but nowhere is there the slightest suggestion that schedules would need to be adjusted or dates changed if the trains were lawfully operated. While not squarely in point, the highway department study, reported by Dannaher, indicated that on the day of the check, 15 Pennsylvania railroad trains traveled over this crossing at 35 miles per hour and 12 New York Central trains moved at a speed of 79 miles per hour. The reasonable inference seems to be that if the ordinance rate could be respected by one road, it could by the other without interfering in any substantial way with the movement of interstate commerce.

Mr. Sprunk testified also that the train, involved in the accident giving rise to this action, no longer operates because of insufficient passenger traffic. To have conformed to the speed regulation on the day of the accident would certainly not have been a serious interruption to interstate commerce if the train was discontinued shortly thereafter.

Mr. Sprunk, who identified himself as superintendent of the Ohio Central Division of the defendant railroad, testified that he had notice of the passage of Worthington ordinance No. 54-59.

The sole assignment of error upon which this appeal is predicated is well taken. While not assigned as error, the directed verdict by the trial court also prevented the jury, under proper instruction, from determining the issue of possible negligence, even though the claim of negligence per se was lost to the plaintiff by the court erroneously striking the ordinance from her petition.

The judgment of the trial court is, therefore, reversed and the cause is remanded for further proceeding according to law.

*Judgment reversed.*

DUFFY, P. J., concurs.

BRYANT, J., dissenting. Because of the facts in this case and the provisions of the municipal ordinance involved, I must respectfully dissent from the majority opinion.

Plaintiff's exhibit No. 1 is so all-inclusive and so sweeping that it apparently would apply with full force to the minimum amount of trackage which might traverse a municipal corporation for a few feet or a few hundred feet, even though the tracks were elevated ten feet in the air and there was no highway crossing in the area. The ordinance is absolute in its terms and would apply in rural territory several miles from the business or even residential areas, and is so drastic as to render it under the circumstances in this case arbitrary, unreasonable and unconstitutional. It is not for courts to write exceptions into laws or ordinances but rather to interpret them as they are written.

(Decided February 11, 1964.)

ON MOTION for reconsideration.

TROOP, J. It was clearly pointed out in the original decision, to which appellee's motion to reconsider is addressed, that a single assignment of error was before this court and that one only was passed upon.

Whether the trial court erred in directing a verdict was not considered. In fact, it obviously could not be considered in the absence of a complete bill of exceptions. Counsel for appellee urges again that a Court of Appeals must respect the integrity of a trial court. The attitude of this court toward trial courts should be clear at this point, making it needless to say, in the instant case, that the integrity of the trial court was presumed as always and no consideration whatever was given to why it directed a verdict.

Counsel is entirely correct that the original decision of this court made no reference as to the judgment of the trial court being in error. It should be noted that the judgment of the trial court was not simply reversed, but it was reversed and the cause remanded for further proceeding according to law. The cause may be disposed of by the trial court within the applicable law and the range of its sound discretion.

The motion to reconsider is overruled.

*Former judgment adhered to.*

Duffy, P. J., concurs.
Bryant, J., dissents.