[S. F. No. 16408.   In Bank.—October 14, 1940.]

CARL D. FORTENBURY, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Gallagher, Wirin & Johnson for Petitioner.

Robert W. Kenny and Morris E. Cohn, as *Amici Curiae*, on Behalf of Petitioner.

J. H. O'Connor, County Counsel, and Douglas De Coster, Deputy County Counsel, for Respondent.

EDMONDS, J.—Upon application of the petitioner, this court issued a writ of *certiorari* for the purpose of reviewing a judgment in which he was held guilty of contempt of court for violating a temporary restraining order prohibiting picketing in connection with a labor dispute. Admittedly, he continued picketing after service of the order upon him. But he contends that as any restraint upon peaceful picketing is a violation of constitutional right, he committed no contempt of court.

There is no dispute concerning the facts upon which the restraining order was issued. They are fully alleged in the petition and by stipulation are admitted to be true. Briefly summarized they are as follows:

For some time before the present controversy arose, Runnymede Poultry Farms and Poultry Workers Union Local No. 17, of which the petitioner is a member, were engaged in a labor dispute. The differences concerned wages and the right to bargain collectively. Finally, the employees struck, and, as it appeared to them, in order to conduct the strike

most effectively, the union boycotted the products of the employer. In carrying out this purpose the petitioner and other members of the union picketed the premises of the Sunset Poultry Market, one of the employer's customers, although there was no controversy between the owners of the market and the union other than was involved in the sale of the Runnymede products.

Thereupon, the owners of the market brought an action to enjoin the petitioner and others from continuing this picketing. The court issued a temporary restraining order which prohibited the petitioner and others from stationing or maintaining any picket or pickets in front of or in the immediate vicinity of the plaintiffs' establishment until the further order of the court. The order was served upon the petitioner while he was walking to and fro in front of the market carrying a placard with the inscription, ''This market unfair to organized labor, Local No. 17, C. I. O.''. Disregarding the order, the petitioner continued picketing.

Upon the filing of an affidavit concerning the petitioner's continuance of picketing, a citation issued requiring him to show cause why he should not be adjudged in contempt of court. After a hearing, in which he admitted the facts which have been stated, he was held guilty of contempt, and fined as punishment therefor.

The first question which must be considered concerns the scope of the present proceeding. The petitioner contends, in effect, that upon the facts presented to it, the respondent court had no jurisdiction to restrain peaceful picketing, that the order served upon him was therefore void and he could violate it with impunity. On the other hand, the respondent insists that the superior court had jurisdiction to issue the order which was disregarded, and, conceding for the sake of argument, that it acted erroneously, the propriety of the order may not be reviewed upon *certiorari*.

The term jurisdiction originally included only the right to hear and determine concerning the subject matter in a particular case. But the modern tendency has been to broaden that meaning, particularly where the right to review a decision by *certiorari* or other prerogative writ is the question for decision. A court may have jurisdiction of the cause of action and of the parties, but it may lack the authority or power to act in the case except in a particular

way. Under such circumstances, it is now generally held that the court had no jurisdiction. As pointed out in the case of *Spreckels S. Co.* v. *Industrial Acc. Com.,* 186 Cal. 256, 260 [199 Pac. 8], "the word is frequently used as meaning authority to do the particular thing done, or, putting it conversely, a want of jurisdiction frequently means a want of authority to exercise in a particular manner a power which the board or tribunal has, the doing of something in excess of the authority possessed".

More recently, this court again recognized the confusion which exists in determining whether, in a given situation there was a lack of jurisdiction or mere error in the exercise of jurisdiction. Upon the authority of the Spreckels case and other decisions, it held "that when a statute authorizes prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction, and *certiorari* will lie to correct such excess". (*Rodman* v. *Superior Court,* 13 Cal. (2d) 262 [89 Pac. (2d) 109].) In other words, under the modern practice, the writ of *certiorari* may properly be used to question the exercise of unauthorized power in a case where the court had jurisdiction of the parties and the subject matter.

This concept of jurisdiction does not imply an abandonment of fundamental legal principles. On the contrary, it necessarily follows from the constitutional requirements of judicial process and long established rules. (*Texas Co.* v. *Bank of America,* 5 Cal. (2d) 35 [53 Pac. (2d) 127] ; *Sour* v. *Superior Court,* 1 Cal. (2d) 542 [36 Pac. (2d) 373] ; *Hall* v. *Superior Court,* 198 Cal. 373 [245 Pac. 814] ; *Loftis* v. *Superior Court,* 25 Cal. App. (2d) 346 [77 Pac. (2d) 491] ; *Michel* v. *Williams,* 13 Cal. App. (2d) 198 [56 Pac. (2d) 546].)

Applying these principles to the present case, as has been pointed out the facts are undisputed, that is, there was no conflict in the evidence before the superior court upon which the restraining order was issued. The parties agree that there was a labor dispute between the union of which petitioner is a member and the Runnymede Poultry Farm; that a strike has been called by the union in an attempt to enforce its demands and that secondary picketing had been resorted to. But it is also stipulated that the picketing was peaceful. The question is therefore presented whether under those cir-

cumstances the superior court had jurisdiction, as that term is broadly used, to enjoin the petitioner and his associates from picketing. If it did not have such jurisdiction, then the judgment of contempt may and should be annulled in this proceeding.

In the cases of *C. S. Smith Metropolitan Market Co.* v. *Lyons* (*ante,* p. 389 [106 Pac. (2d) 414]), and *McKay* v. *Retail Automobile Salesmen's Union* (*ante,* p. 311 [106 Pac. (2d) 373]), which were considered and decided concurrently with the present appeal, it was held that labor may exert economic pressure upon employers provided that peaceful means are used and the purpose is one reasonably related to labor conditions. It was also held that the boycott, both primary and secondary, is a proper method of applying such pressure. These decisions are determinative of the present controversy.

Although the respondent argues that a person secondarily boycotted is an innocent third party caught between the upper and lower millstones of an industrial dispute in which he has no interest, this is clearly not correct. One who sells a product of a merchant or manufacturer engaged in a labor dispute with his employees, inescapably becomes an ally of the employer. He has a direct unity of interest with the one against whom labor's complaint is directed. By providing an outlet for that product, he enables the employer to maintain the working conditions against which labor is protesting. And unless the union is allowed to follow the product to the place where it is sold and to ask the public by peaceful representations to refrain from purchasing it, the workers have no real opportunity to tell their story to those whose interest or lack of interest will, in large measure, determine the issues in dispute. (*Goldfinger* v. *Feintuch,* 276 N. Y. 281 [11 N. E. (2d) 910, 116 A. L. R. 477].)

Obviously, the establishment where a product is sold is the only effective point where the consumer may be told the facts concerning a labor controversy. "It may very well be", says the American Federation of Labor in an *amicus curiae* brief filed in this case, "that the public would choose to give the merchant the benefit of their custom in an even greater measure because of the dispute. The democratic concept of society envisages that in the case of a dispute in which the workers' position is unjust, the public will so respond".

Wherever that occurs, the Federation continues, ''picketing will fail and the merchant will be unaffected. It is only in cases where the truth will deter the consuming public that the merchant will suffer a financial loss; but under these circumstances the balance of interest is not exclusively between the union and the merchant; the interest and attitude of the public, in the last analysis, is the direct cause of the loss of patronage.''

██ As has been pointed out in the Smith case, the law does not invariably give relief against damage, because in some circumstances the infliction of damage, though intentional, is without legal remedy. So far as cases of picketing or boycott are concerned, there is no remedy for damage which may be inflicted where, as here, the means are peaceful and the purpose is reasonably related to working conditions or the right to bargain collectively. ██ The superior court, therefore, had no jurisdiction to issue the restraining order, which was violated, and should not have adjudged the petitioner guilty of contempt.

The judgment is annulled.

Gibson, C. J., Carter, J., and Moore, J., *pro tem.*, concurred.

Curtis, J., Shenk, J., and Marks, J., *pro tem.*, dissented.