[Civ. No. 57417. Second Dist., Div. Five. Mar. 25, 1980.]

J. PAUL DEMAREST et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
CHRISTOPHER EARDLEY HALL, Real Party in Interest.

COUNSEL

Dunne, Shallcross & Kane and John J. Gulino for Petitioners.

No appearance for Respondent.

Mulvey & Mulvey and Michelle Mulvey for Real Party in Interest.

## OPINION

**HASTINGS, J.**—This is a proceeding in mandamus which challenges respondent court's refusal to quash service of summons on petitioners.

The facts underlying the suit pending below arise out of a child custody battle between real party in interest and his former wife, Margaret Jean Hall (hereinafter Margaret). Real party and Margaret were married in Nevada in 1967. They immediately took up residence in California. The marriage produced a daughter in 1969 and a son in 1972, both born in California. The family continued to live in California until 1975, when Margaret and real party separated. Margaret took the children and moved to Mississippi, her parents' residence, preparatory to her filing for divorce. A Mississippi divorce decree, granted in February 1976, awarded custody of the two children to Margaret.[1]

In April 1976 Margaret returned the children to California to live with their father pursuant to an agreement that he have temporary custody while she completed her education. The agreement, which is memorialized by a letter from real party to Margaret,[2] contemplated that real party's temporary custody would last about one year. In fact, the children were still residing in California with real party in April 1978 when real party filed suit in Los Angeles County Superior Court to establish the Mississippi divorce judgment as a California judgment and to modify the judgment to award him permanent custody of the children. Margaret appeared in that action, opposed real party's attempt to gain permanent custody and affirmatively sought a ruling awarding her custody.

On June 30, 1978, real party and Margaret both being present and represented by counsel, and having entered into a stipulation regarding modification of the Mississippi judgment, the Los Angeles Superior Court awarded custody of the children to real party, "without prejudice to the rights of either party."[3] It further ordered that real party was to provide Margaret with one-way airline tickets from Los Angeles to New Orleans for herself and the children; that she was to have physical custody of the children for purposes of visitation from July 5, 1978, to August 15, 1978; that during the visitation period, Margaret was to reside with the children at her parents' home in Waveland, Mississippi; and that she was to have the children at the New Orleans airport at 4

---

[1] Real party alleged below, in his opposition to the motion to quash service of summons on petitioners herein, that custody was awarded to Margaret pursuant to stipulation.

[2] But which, apparently, was never submitted to any court for its confirmation.

[3] This was apparently an award of temporary custody.

p.m. August 15, 1978, where they would be picked up by real party and returned to California. Issues regarding alimony and community property were reserved for future trial. Margaret took the children, pursuant to the order, as scheduled on July 5, 1978.

On August 4, 1978, Margaret filed suit in Louisiana to have the Mississippi decree made a Louisiana decree. In her Louisiana petition she alleged that the Mississippi decree had awarded her permanent custody of the children, that pursuant to an agreement between herself and real party, the children had been residing temporarily with real party while she attended school, that while real party had temporary custody of the children pursuant to the agreement, he had instituted legal proceedings in California seeking permanent custody, that those proceedings were still pending, and that she had obtained the children from real party, pursuant to court order, for the purpose of bringing them to Mississippi for the summer. Margaret alleged that she had taken up residence in Louisiana. She sought an award of child support in addition to custody.

That same day, August 4, 1978, the Louisiana court awarded temporary custody to Margaret, enjoined real party from visiting with the children outside the jurisdiction of the court pending further orders, and issued an order to show cause returnable August 28, 1978. Petitioners herein served as legal counsel for Margaret in the Louisiana action.

On August 9, 1978, Margaret's California counsel received a letter from petitioner Demarest advising him that Margaret had initiated custody proceedings in New Orleans and that she would not be returning the children to California. On August 11, 1978, Margaret's California counsel communicated this information to counsel for real party, who in turn confirmed this information by a telephone call to Demarest in Louisiana. Real party did not travel to New Orleans on August 15, 1978, nor did he appear personally or through retained counsel at the August 28, 1978, hearing in Louisiana on the order to show cause, although he was served with process in that action by mail in California during the last week of August.[4] On August 28, 1978, the Louisiana court awarded Margaret permanent custody and permanently enjoined real party from visiting with the children outside Louisiana.

---

[4]Pursuant to Louisiana law a "curator ad hoc" was appointed to represent real party as the absent defendant to the action. It does not appear that any defense was asserted by the curator ad hoc.

Real party hired a private detective in an effort to locate his children. On August 31, 1978, after consultation with unnamed members of the Los Angeles Police Department, real party flew to New Orleans in an effort to retrieve his children. He located his son, but could not find his daughter. He put his son in a rented car and drove to the Mobile, Alabama airport where he was arrested. Eventually, real party was released and returned to California with his son. He has still not located his daughter, nor does he know Margaret's present whereabouts.

On September 15, 1978, Margaret, in absentia, was found in contempt of the June 30, 1978, Los Angeles Superior Court order, was denied visitation rights with her son and was ordered to serve five days in jail. On November 28, 1978, the Los Angeles Superior Court awarded permanent custody of both children to real party, denied Margaret all visitation rights, and terminated child support payments to her.

■ Real party has now sued Margaret and petitioners for damages for abduction of a child. The complaint alleges that Margaret and petitioners entered into a conspiracy, prior to June 30, 1978, which involved Margaret's fraudulently entering into the June 30th stipulation for the purpose of obtaining physical possession of the children with the intention of violating the June 30th order with respect to returning the children, and which included the filing of the Louisiana custody proceeding. Petitioners moved to quash service of summons, alleging that the State of California lacked any basis for exerting personal jurisdiction over them.

The motion to quash was supported by the affidavits of petitioners Russo and Demarest. They averred that they and the petitioner law firm were licensed to practice law only in Louisiana; that the firm had no agents nor employees outside that state; that neither they nor the firm did business, owned property, paid taxes, or had any other connections with the State of California. They further averred that they had been consulted by Margaret sometime after June 30, 1978, in their capacities as legal counselors and that all of their acts upon which real party predicated his lawsuit were performed in Louisiana.

Real party contended that the affidavits do not negate the possibility that Margaret also consulted petitioners prior to June 30, 1978. Real party pointed to the fact that petitioner Russo notarized documents in Louisiana which Margaret filed in the California custody proceeding

prior to June 30, 1978. Real party also made the following allegations from which it might be inferred that Margaret had consulted petitioners prior to June 30, 1978: that Margaret had stated to him during their marriage that petitioner Russo had been a personal friend of hers for many years; that Margaret was apparently willing to concede the issue of temporary custody on June 30, 1978, provided she got the right to remove the children from the state; that an inquiry was addressed to the court by Margaret's California counsel, at her direction on June 30, 1978, as to whether during the visitation period she might take the children to New Orleans to visit relatives when, to the best of real party's knowledge, she had no relatives in New Orleans;[5] and that Margaret stated to real party when he delivered the children to her on July 5, 1978, that her California counsel would no longer be handling her case, that she had "legal friends" in Louisiana who would be helping her.[6]

Real party further argued that petitioners' acts outside of California had effects inside this state which enabled California to exercise jurisdiction over petitioners in a lawsuit arising out of those acts. Respondent denied petitioners' motion to quash and the within petition followed. We issued an alternative writ to consider whether California can, consistent with the due process clause of the United States Constitution, exercise personal jurisdiction over petitioners.

We note initially a procedural issue raised by real party; namely, whether or not the petition was timely. Code of Civil Procedure, section 418.10, subdivision (c) provides that a writ petition seeking review of an order denying a motion to quash must be filed within 10 days after service on the defendant of written notice of entry of the order, "or within such further time not exceeding 20 days as the trial court may for good cause allow...." The motion to quash service of summons was denied July 6, 1979. On August 28, 1979, respondent issued a minute order finding that "through inadvertence and clerical error" no notice of the July 6th order had been mailed to the parties. Respondent therefore ordered that a copy of the July 6th minute order be mailed to the parties, along with a copy of the August 28, 1979, order and further ordered that petitioners had 30 days after notice of the August 28, 1979, order

---

[5]Real party does not apprise us of the court's response to his inquiry.

[6]Real party asserts that he did not communicate this information to his own attorney until a month later when the children had been removed from Mississippi.

"to respond." The "response" was the present petition which was filed September 26, 1979.

Real party argues that the time given "to respond" was in fact time in which to file a responsive pleading to the complaint and not an expansion of time within which to file a writ petition. The August 28, 1979, order is ambiguous. So far as appears from the minute order, neither the parties nor counsel were present in the courtroom that day, thus the court could not have orally clarified its written order for their benefit. Obviously, petitioners understood the expansion of time in which "to respond" to include the filing of a writ petition. The respondent court, which was named and served as a party to the writ proceeding, has not made an appearance herein, although it is reasonable to assume that it would have done so had it intended the August 28, 1979 order to carry the limited meaning for which real party contends. Finally, the importance of the central issue in this proceeding to the legal profession generally, causes us to resolve the ambiguity in respondent's August 28, 1979, order in favor of petitioners' right to file the within petition.

We turn now to a consideration of the due process issues raised by this petition. Code of Civil Procedure, section 410.10 provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." In defining the limits imposed by the United States Constitution, the Supreme Court has stated "that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' [Citations omitted.]" (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057].) The standard is easily stated, but its application to particular fact situations is neither easy nor mechanical. "...[A]n essential criterion in all cases is whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State. [Citations omitted.] (*Kulko* v. *California Superior Court* (1978) 436 U.S. 84, 92 [56 L.Ed.2d 132, 141, 98 S.Ct. 1690].) Thus while California has, on occasion, asserted jurisdiction based upon acts outside California which have an effect inside the state (*Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296 [118 Cal.Rptr. 548]), it is not every such act which forms a basis for jurisdiction. (*Kulko* v. *California Superior Court, supra.*)

The clear lesson of *Kulko* is that state courts must exercise restraint in asserting personal jurisdiction over nonresidents whose "contacts" with the forum state arise out of family disputes. The poignancy of the family tragedy in this case cannot be permitted to obscure the "quality and nature" of petitioners' acts upon which real party predicates jurisdiction. Those acts, whether well-advised or ill-advised, whether ethical or unethical, consisted solely of giving legal advice to a client and notarizing documents for a client in the State of Louisiana.

Assuming that petitioners did advise Margaret to stipulate to the June 30th arrangement so that she might legally remove the children from this state for the purpose of instituting custody proceedings elsewhere, such advice did not place petitioners in contempt of the California court since they were neither officers of the court nor subject to the June 30, 1978, order.[7] It is pointless for us to speculate as to what Margaret would have done had the Louisiana court not awarded her temporary custody before the date set by the California court for her to return the children to their father, or what roles, if any, petitioners would have assumed in such a scenario. The fact is, she did have such an order from the Louisiana court and, so far as appears from the record, petitioners' only activity was legal advice and representation in obtaining it.

Real party alleges that petitioners, as Margaret's counsel, misrepresented material facts to the Louisiana court. If that is true, petitioners would be subject to disciplinary proceedings in Louisiana. Furthermore, real party had actual notice of the Louisiana action and could have raised those allegations there. We will not assume that the Louisiana court would have behaved unreasonably or chauvinistically toward real party had he chosen to litigate in that arena. Real party, of course, was not obliged to appear and defend in Louisiana, but his decision not to[8] cannot be converted into a basis for subjecting petitioners to the jurisdiction of California.

---

[7] We do not minimize the seriousness of Margaret's violation of the June 30, 1978, court order. We do note, however, that California has long permitted a challenge to the validity of a court order after a violation of the order. (See, e.g., *Fortenbury v. Superior Court* (1940) 16 Cal.2d 405 [106 P.2d 411].) In effect, Margaret merely took her challenge to another forum.

[8] Real party's statements in the record before us demonstrate that real party was unwilling to subject himself to the jurisdiction of the Louisiana court because of the financial liability to which he would have exposed himself.

Family law disputes are, of course, not the only legal disputes which give rise to diversity of jurisdiction. Whenever a judgment is obtained in another state against a citizen of California, it has an effect in California; but that fact cannot create a cause of action against the foreign counsel who prosecuted the out-of-state action. Nor can such counsel's advice to his client as to the most efficacious method of invoking the jurisdiction of the foreign court be converted into a conspiracy against the California citizen or against the legal system of this state.

The solution devised by the Founding Fathers to deal with forum shopping is the full faith and credit clause of the United States Constitution. Unfortunately that solution breaks down in the family law area where courts retain continuing jurisdiction over questions of custody and support. The need for reform, which this case certainly demonstrates, has been addressed, at least in part by the Uniform Child Custody Jurisdiction Act, to which California is a party (Civ. Code, § 5150 et seq.) but which Louisiana had not yet adopted when the custody proceedings commenced there. The problems which remain in this area of the law would not be alleviated by allowing real party to proceed with his suit against petitioners. In fact, the problems would be seriously compounded were we to hold that lawyers who undertook to represent one parent in a custody suit could be sued for damages in another state by the competing parent. Such a holding would, in all probability, simply multiply the all-too-frequent instances of frustrated parents resorting to self-help.[9]

So long as the law allows the state of current domicile of the child to assume jurisdiction in custody matters, a lawyer does no more than the law allows by advising a client to take advantage of the system. That is what real party did when he sought relief in the California court while the children were in his temporary custody; that is what Margaret did when she sought relief in Louisiana.

Let a peremptory writ of mandate issue directing respondent court to vacate its order of July 6, 1979, denying petitioners' motion to quash service of summons in that matter entitled Christopher Eardley Hall,

---

[9]It is probably worth noting at this juncture, that if California could assert jurisdiction over petitioners for their part in advising Margaret, Louisiana would be able to assert jurisdiction in a similar suit over the Los Angeles Police Department officer who advised real party as to his self-help options.

plaintiff, v. Margaret Jean Hall et al., defendants, L.A.S.C. No. C 270981, and to enter a new and different order granting said motion.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied April 24, 1980, and the opinion was modified to read as printed above. The petition of real party in interest for a hearing by the Supreme Court was denied June 4, 1980. Mosk, J., was of the opinion that the petition should be granted.