[Nos. B066221, B069374. Second Dist., Div. Four. June 6, 1994.]

CONDOR ENTERPRISES, LTD., Plaintiff and Respondent, v.
VALLEY VIEW STATE BANK, Defendant and Appellant.

COUNSEL

Cox, Castle & Nicholson, Jill L. Jasper and Kenneth B. Bley for Defendant and Appellant.

Leevan & Lord, Paul Simon Leevan and Scott Richard Lord for Plaintiff and Respondent.

OPINION

**WOODS (A. M.), P. J.**—Valley View State Bank (Valley View) appeals an order awarding sanctions to Condor Enterprises, Ltd. (Condor) under Code of Civil Procedure section 128.5.

Valley View and Condor were, respectively, senior and junior lienholders on a property owned by Santiago Valley I (Santiago). Valley View held a $5.2 million first deed of trust on the property, a mobilehome park, and Condor held a $5 million second deed of trust on the same property.

On January 20, 1992, Valley View's note came due. Santiago failed to make payment and, on February 4, 1992, Valley View issued a notice of default. Condor then attempted to exercise its rights as junior lienholder to redeem the property from Valley View, the senior lienholder. To that end, on February 14, 1992, Condor's attorney, Scott Richard Lord, wrote Valley View's attorneys demanding a statement of principal, interest and other costs and charges due on the first deed of trust. He further advised Valley View's attorneys that Condor had established an escrow at Lincoln Title Company for purposes of paying off Valley View's loan and receiving Valley View's reconveyance documents.

On February 18, 1992, Valley View provided a payoff demand statement of $5,239,590.14.

On February 25, 1992, Condor deposited the amount of Valley View's payoff demand statement into an escrow account at the Marlene Steiner

Escrow Service. According to the allegations of Condor's verified complaint, Valley View's attorneys informed Condor that they would not exchange the reconveyance documents concurrently with the payment of funds by Condor but required Condor to immediately wire transfer the total amount claimed by Valley View in exchange for which Valley View would prepare and forward the appropriate reconveyance documents within a week. The complaint alleged further that Valley View's attorney told Condor if Valley View failed to forward the reconveyance documents, Condor had an adequate remedy at law and could sue the bank.

On February 27, 1992, Condor filed a verified complaint for a temporary restraining order, preliminary and permanent injunctions and for damages. Condor sought an order compelling Valley View to execute and deliver into escrow the original deed and other appropriate reconveyance documents and a full and complete accounting of Valley View's transactions with Santiago in exchange for the amount deposited by Condor in the escrow account.

On the same day, the court issued an order to show cause re preliminary injunction and temporary restraining order. The matter was set for hearing on March 16, 1992.

On March 17, 1992, after the hearing, the court granted the preliminary injunction and required the parties to agree on another escrow and escrow instructions no later than March 23, 1992. It ordered Valley View to deposit the appropriate documents and Condor to deposit $5,279,158.46 into escrow no later than March 23, 1992, and directed the parties to return to court no later than March 24, 1992, for the court to pick an escrow if they were unable to agree upon an escrow.

The parties agreed to use Lincoln Title Company and an escrow account was opened there. Valley View's attorneys also submitted proposed joint escrow instructions to Condor.

On March 24, 1992, Valley View filed an ex parte motion for reconsideration of the court's order granting the preliminary injunction. It argued, inter alia, that the granting of equitable relief was inconsistent with the Civil Code provisions governing reconveyance and redemption of real property liens. Condor filed an opposition to the motion. In addition, it filed an ex parte application for modification of the preliminary injunction to reflect, inter alia, payments made by Santiago to Valley View that were not accounted for by the court's March 17 order.

At the March 24, 1992, hearing on the motions, the court modified the preliminary injunction order to name Lincoln Title as the escrow company

and extended the time for the parties to agree on escrow instructions to March 27, but otherwise denied the applications.

On March 31, 1992, Valley View filed another ex parte application, this time for an order dissolving the preliminary injunction or, alternatively, compelling the execution of joint escrow instructions by Condor. It also sought clarification of the court's March 17 order with respect to whether the proceedings prevented a third party from paying off Valley View's lien.

Condor also filed an ex parte application for modification of the preliminary injunction or for an order determining escrow instructions. Condor sought an order that its escrow instructions be executed by Valley View and deposited into escrow. It also sought a determination that the amount to be paid to Valley View was $5,209,213.54.

On April 1, 1992, the court issued its ruling on the ex parte applications. It granted Condor's request to modify the March 17 order to reflect the amount due to Valley View was $5,209,213.54 and granted Valley View's request to compel Condor to execute its escrow instructions. Both applications were otherwise denied.

On April 3, 1992, Valley View filed a notice of appeal from the March 17 preliminary injunction.

On April 6, 1992, Condor's attorneys learned that Santiago had paid off its loan to Valley View.

On April 9, 1992, Condor filed an ex parte application for an order to show cause re contempt and for sanctions under Code of Civil Procedure section 128.5. A declaration submitted by one of Condor's attorneys, Paul Simon Leevan, elaborated the basis of Condor's request for sanctions: "It is quite apparent that after making the pay-off demand to Condor and while requesting the Court for [sic] modifications of the injunction, Valley View was negotiating secretly with Santiago Valley I, the debtor. Valley View never had any intention of complying with the preliminary injunction and its requests for modification were merely devices to stall and delay the proceedings pending the completion of its negotiations with the debtor." The declaration went on to claim that Condor was damaged because "[i]t has been compelled to pay interest on the monies it had borrowed in order to make the tender to [Valley View] and additionally has incurred substantial fees and costs in these proceedings."

A declaration by Condor's other lawyer, Scott Richard Lord, stated that the attorney fees and costs incurred by Condor in the proceeding were in the

amount of $32,606.82. He also claimed other costs which had not yet been computed from escrow fees, title company costs and interest charges on the money tendered to Valley View.

On April 14, 1992, the court issued the order to show cause re contempt and for award of sanctions.

Condor filed a supplemental memorandum of points and authorities in which it claimed as sanctions, in addition to the $32,606.82 in attorney fees, $114,777.95 in interest charges, with additional interest charges of $1,466.07 per day pending release by the court of the money held in escrow, $105,600 in loan fees and $105,600 in prepayment penalty for a total of $358,584.77. It supported the claim with a declaration from Dr. Adeline Yen Mah. The Mah declaration stated that "[i]n order to have the funds available to satisfy the outstanding obligation on the Santiago Valley I real property, Condor Enterprises, Ltd. borrowed the full amount." The declaration went on to recount the loan fees, prepayment penalty and interest charged on the amount of the loan in the amounts described above.

Valley Bank filed an opposition to the order. It argued that proceedings had been stayed by the filing of its notice of appeal, thereby depriving the court of jurisdiction to go forward with the order to show cause hearing. It also alleged that it had not violated the court's order by its reconveyance to a third party and was not, therefore, in contempt of the March 17 order.

Subsequently, Valley View filed a supplemental opposition in which it argued that the preliminary injunction was void because the court had failed to require an undertaking from Condor as a condition of granting it, as required by Code of Civil Procedure section 529 and, therefore, it could not be held in contempt of the void order.

The hearing on the order to show cause was held on May 4, 1992. Among the witnesses called by Condor were Richard Hall, general partner in Santiago, George Turk, a certified public accountant employed by Santiago and also a limited partner in Santiago, and Charles Black, the attorney for Santiago.

The testimony of Hall, Turk and Black established that during the months of January through March 1992, while Condor was attempting to pay off Santiago's loan from Valley View under the provisions of Civil Code section 2904, Valley View was negotiating with Santiago and the loan was paid off on April 6, 1992.

Valley View submitted no evidence.

On June 9, 1992, the court issued an order in which it found that Valley View was in contempt of the preliminary injunction. It declined to hold Valley View in contempt, however, because, no bond having been required in accordance with Code of Civil Procedure section 529, the injunction was a "nullity." It went on to grant Condor's request for sanctions, finding that Valley View's actions "which allowed them to complete their deal with Santiago as they [*sic*] wanted to do despite this Court's orders requiring them to engage [*sic*] [Condor's] deal, were done for the sole purpose of causing unnecessary delay, thus enabling them to deal solely with Santiago. Their actions in not engaging [*sic*] the process articulated in the initial March 17, 1992 order was bad faith, because they were done with the ulterior purpose, not of being unclear about the content of the order, but of delaying the implementation of escrow, so Santiago's deal could be consummated. [¶] Moreover, the Court finds these 'actions' (failure to comply with the March 17 order, requesting reconsideration on March 24, failure to comply with the March 17 and March 24 orders, applying for dissolution of the injunction on March 31, 1992, and failure to comply with the March 17 and March 24 and April 1 orders prior to filing notice of appeal) were done for the purpose of harassing [Condor]."

The court gave Condor an opportunity to submit additional evidence supporting the amount of sanctions claimed by it and allowed Valley View an opportunity to submit counter evidence.

In response, Condor's attorney, Lord, filed a supplemental declaration. In it, he claimed attorney fees and costs through May 31, 1992, or $64,582.38, which he supported with billing statements to Condor from his firm. He also claimed a total of interest charges of $157,293.98 on loan fees of $105,600 and prepayment penalty of $105,600.

On June 26, 1992, the trial court issued its order on the amount of sanctions. It awarded Condor $47,801.25 in attorney fees, $1,801.63 in costs, $71,866.83 in interest charges, from March 17 to May 14, 1992, and $105,600 for the prepayment penalty for a total of $227,069.71.

The court gave Valley View an opportunity to conduct further discovery on the issues of interest charges and attorney fees with a potential penalty of additional attorney fees and costs to Condor unless Valley View's discovery revealed "grounds for a substantially different amount[.]"

Valley View elected not to pursue discovery but, instead, filed this notice of appeal. We reverse.

Valley View contends that the order granting sanctions must be reversed for the same reason that the trial court itself refused to hold Valley View in

contempt; the March 17 preliminary injunction was invalid because the court failed to require a bond, pursuant to Code of Civil Procedure section 529. ■■ We agree with Valley View that sanctions under Code of Civil Procedure section 128.5 for disobedience to a court order are improper where the order is in excess of the court's jurisdiction.[1] Although no case has so held, there is ample and well-settled authority that holds, by analogy, that the court may not punish with contempt disobedience to a preliminary injunction which is invalid because a bond was not posted. Indeed, the trial court recognized this authority when it declined to hold Valley View in contempt. There is no rational basis to distinguish between contempt and sanctions where either is imposed for disobedience of an order in excess of the court's jurisdiction.

Code of Civil Procedure section 529 states in relevant part: "On granting an injunction, the court or judge must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction . . . ." (Code Civ. Proc., § 529, subd. (a).)

"It is very clear from the authorities that a preliminary injunction does not become operative until a bond is furnished, and that such a bond is expressly required. [Citations.]" (*Griffin* v. *Lima* (1954) 124 Cal.App.2d 697, 699 [269 P.2d 191]; *Federal Automotive Services* v. *Lane Buick Co.* (1962) 204 Cal.App.2d 689, 695 [22 Cal.Rptr. 603].) "Without the bond a preliminary injunction is a nullity. [Citations.]" (*Oksner* v. *Superior Court* (1964) 229 Cal.App.2d 672, 687 [40 Cal.Rptr. 621]; *Northpoint Homeowners Assn.* v. *Superior Court* (1979) 95 Cal.App.3d 241, 246 [157 Cal.Rptr. 42].) This is because the failure of a court to comply with a statutory scheme, such as that which governs the granting of injunctive relief, is a jurisdictional defect. (*Fortenbury* v. *Superior Court* (1940) 16 Cal.2d 405, 408 [106 P.2d 411]; *In re Berry* (1968) 68 Cal.2d 137, 147 [65 Cal.Rptr. 273, 436 P.2d 273].) Accordingly, as a jurisdictional matter, a party cannot be held in contempt for disobedience to a preliminary injunction issued without a bond. (*Griffin* v. *Lima, supra*, 124 Cal.App.2d at pp. 699-700; *In re Berry, supra*, 68 Cal.2d at pp. 148-149.)

■■ As was said in *Berry*: "In this state a person affected by an injunctive order has available to him two alternative methods by which he may

---

[1]Code of Civil Procedure section 128.5 allows a court to impose monetary sanctions, including reasonable expenses and attorney fees against a party which it finds has engaged in bad faith actions or tactics that are frivolous or solely intended to cause unnecessary delay to the other party. (Code Civ. Proc., § 128.5.)

challenge the validity of such order on the ground that it was issued without or in excess of jurisdiction. He may consider it a more prudent course to comply with the order while seeking a judicial declaration as to its jurisdictional validity. [Citation.] On the other hand, he may conclude that the exigencies of the situation or the magnitude of the rights involved render immediate action worth the cost of peril. In the latter event, such a person, under California law, may disobey the order and raise his jurisdictional contentions when he is sought to be punished for such disobedience. If he has correctly assessed his legal position, and it is therefore finally determined that the order was issued without or in excess of jurisdiction, his violation of such void order constitutes no punishable wrong. [Citations.]" (*In re Berry*, *supra*, 68 Cal.2d at pp. at 148-149.)

██ No case has decided whether sanctions under Code of Civil Procedure section 128.5 can be imposed for disobedience of a void preliminary injunction. The Supreme Court in *Union Pacific R.R. Co.* v. *State Bd. of Equalization* (1989) 49 Cal.3d 138 [260 Cal.Rptr. 565, 776 P.2d 267], specifically declined to decide the question because, having found the injunction in that case valid, it was not necessary to resolve the issue. (*Id.* at pp. 157-158, fn. 19.) In the instant case, the only reason advanced by Condor in support of the sanctions is that "Valley View has not been sanctioned for disobeying the preliminary injunction, which the court later vacated, but rather, sanctions were awarded against Valley View because of its continuous course of reprehensible conduct."

This assertion is demonstrably false on two grounds. First, the court never "vacated" the preliminary injunction but, rather, recognized that the injunction was a "nullity" from its inception and on that ground declined to hold Valley View in contempt. Second, sanctions were not imposed against Valley View because of an unspecified course of reprehensible conduct but for specific actions. Those actions consisted of either disobeying the preliminary injunction or filing motions to seek to have it set aside or dissolved. Thus, this case is no different than where a court attempts to hold a party in contempt for disobeying an invalid injunction. The result must be the same because the court, having issued the injunction in violation or excess of its jurisdiction, there is no "punishable wrong" in the disobedience of such injunction, whether the attempted punishment is by contempt or sanctions.

The order of sanctions must, therefore, be reversed. In view of our disposition, it is not necessary to address Valley View's further arguments.

The order is reversed. Valley View to have its costs.

Hastings, J., and Klein (Brett), J.,* concurred.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.