**COLLINS, Appellee,**

**v.**

**COLLINS, Appellant.**

[Cite as *Collins v. Collins* (2000), 139 Ohio App.3d 900.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18069.

Decided Sept. 22, 2000.

■

■

*Selena S. Collins, pro se.*

*Arvin S. Miller,* Assistant Public Defender, for appellant.

BROGAN, Judge.

Defendant-appellant, Ralph Collins, appeals from a trial court order finding him in contempt of court. The trial court imposed a thirty-day jail sentence, but indicated that Collins could purge himself of contempt by paying his ex-wife the value of her interest in Collins's retirement at the time of his separation from the United States Air Force.

According to the record, the parties were married in November 1988, and were divorced on February, 20, 1999. In the divorce decree, the court made the following order in Section 9 (Retirement Benefits):

"Each party shall take a fractional share of the retirement interest of the other from the Active Duty US. [*sic*] Air Force for the Defendant and the US [*sic*] Air Force Reserve for the Plaintiff. Said fractional share shall be as follows:

"The numerator shall be 8 and the denominator shall be the number of years of service; said fraction shall be multiplied by the benefit, which shall then be divided by two. Each party agrees to do all voluntary acts, or refrain from any voluntary acts, necessary to protect the rights of the other in said retirement interest. If either party should be separated from the US. [*sic*] Air Force, and receive any separation benefits as a result thereof, said party shall immediately notify the other party of said benefit and shall pay over to the other a pro-rata share of said benefit pursuant to the formula above. Additionally, said separated party is permanently enjoined from cashing any such benefit checks until said split is accomplished."

The court did not expressly retain jurisdiction over the pension issue in the decree. However, the transcript of the divorce hearing apparently indicates that the court did retain jurisdiction to issue necessary orders to effectuate the division of retirement proceeds.[1]

---

1. We say "apparently," because no transcript of the divorce hearing was filed. However, Mr. Collins said in the statement of facts in his brief that the trial court reserved jurisdiction at the divorce hearing. Mrs. Collins did not file a brief, and we accept the statement of facts filed by Mr. Collins. See App.R. 18(C). In any event, the facts do not appear to be disputed.

At the time of the divorce decree, Collins had been in the Air Force for about thirteen years. However, on August 19, 1999, Collins was honorably discharged and forfeited his military pension. The record does not reveal the reason Collins sought the discharge, and Collins gave no reason for his actions during the contempt hearing. Based on these facts, the magistrate found that Collins violated the decree by voluntarily leaving the Air Force and negating his ex-wife's interest in his retirement. As was noted above, the magistrate found Collins in contempt, imposed a thirty–day jail sentence, and said that Collins could purge himself of contempt by paying the value of his ex-wife's interest in the retirement fund.

Collins objected to the magistrate's decision, but the trial court overruled the objections on October 26, 1999. This appeal then followed. In his single assignment of error, Collins claims the trial court decision was erroneous because it required him to stay in the military for seven more years in order to obtain retirement benefits for his ex-wife. To support this argument, Collins makes two main points. The first is that military benefits are so speculative that retaining jurisdiction over them is unfounded. Specifically, military pensions do not vest until an individual has completed twenty years of service and no cash value exists before that time. As authority for this, Collins relies on *King v. King* (1992), 78 Ohio App.3d 599, 605 N.E.2d 970.

■ As an initial point, we note that Collins did not appeal from the original divorce decree. Therefore, any attempt to re-litigate matters decided in the decree is barred by *res judicata*. See, *e.g., State v. Lopez* (Jan. 21, 1993), Greene App. No. 92–CA–34, unreported at 3, 1993 WL 10931. Specifically, if Collins wished to contest the trial court's ability to retain jurisdiction over the issue of retirement benefits, he should have raised the matter by directly appealing from the original decision. However, to the extent that the contempt order arguably modifies the terms of the original decree, we will briefly consider retention of jurisdiction over non-vested benefits.

■ According to the Ohio Supreme Court, pension or retirement benefits which are accumulated during marriage are marital assets and are subject to property division during a divorce. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 132, 541 N.E.2d 597, 600–601. How vested benefits are distributed depends on their status, *i.e.*, on whether they have matured. *Erb v. Erb* (1996), 75 Ohio St.3d 18, 20, 661 N.E.2d 175, 177–178. For example, if benefits are vested, but unmatured, the trial court may retain jurisdiction and may decide proportionate shares either at the time of divorce or when benefits have become vested and matured. *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 182, 559 N.E.2d 1292, 1297–1298.

■ However, while the Supreme Court has given guidance on distributing benefits that are vested and are not mature, it has not specifically addressed benefits which are not even vested at the time of divorce. On the other hand, the Supreme Court held long ago that property settlement provisions in divorce decrees may be enforced through contempt proceedings. *Harris v. Harris* (1979), 58 Ohio St.2d 303, 12 O.O.3d 291, 390 N.E.2d 789. See, also, Erb, 75 Ohio St.3d at 22, 661 N.E.2d at 179, fn. 3 (noting that contempt power is one means of protecting a spouse's proportionate interest in a retirement plan).

*King* is a lower appellate court decision that does address the issue of benefits that are not vested at the time of divorce. In *King*, the Twelfth District Court of Appeals held that the trial court erred by reserving jurisdiction over a military retirement plan in which the appellant was not yet vested. 78 Ohio App.3d 599, 606, 605 N.E.2d 970. In this regard, the court observed that it had only been able to find cases involving vested retirement plans. According to the court, the lack of authority was due to the limited value of a non-vested interest. In particular, the court stressed that "[i]n the present case, it is unknown whether appellant will remain in the military and become vested in the pension plan. The trial court's division of appellant's possible military pension would provide little or no incentive for appellant to remain in service. Appellant's unvested interest is not even subject to a qualified domestic relations order. We conclude that appellant's interest in the plan is far too speculative to justify the court's failure to 'disassociate the parties from one another or * * * minimize the economic partnership.'" *Id.* at 607, 605 N.E.2d at 974.

However, the Twelfth District subsequently overruled *King* in *Siler v. Siler* (July 25, 1994), Warren App. No. CA93–10–081, unreported, at 1, 1994 WL 386106. In *Siler*, the court concluded that jurisdiction should be retained over an unvested military pension fund because the funds were accumulated during the marriage and the spouse was entitled to a share of the property. *Id.* In contrast to its statements in *King*, the Twelfth District stressed in *Siler* that "[t]he fact that appellee would receive no retirement benefits unless he remains in the service for twenty years is a greater incentive to stay in the military than the incentive to leave the military in order to deprive appellant of any of the pension." *Id.*

Neither *Siler* nor *King* dealt with a voluntary separation for the apparent purpose of depriving an ex-spouse of a court-ordered benefit. We did consider a somewhat related issue in *McClure v. McClure* (1994), 98 Ohio App.3d 27, 647 N.E.2d 832. In that case, we decided that a Voluntary Separation Incentive ("VSI") offered by the Armed Forces was more like a severance benefit than a retirement benefit. *Id.* at 41, 647 N.E.2d at 841–842. Accordingly, we refused to allow VSI payments to be considered marital property. However, a significant

point in *McClure* was our distinction of two out-of-state cases that had allowed VSI payments to be divided as marital property.

In this regard, we noted that in the out-of-state cases, the divorce had been finalized and the wife was awarded a percentage of the husband's military benefits upon retirement. *Id.* at 42, 647 N.E.2d at 842. We further noted that "[t]he husbands in both cases chose to separate before they had served twenty years and thereby sacrificed their right to receive any military retirement benefits." *Id.* Additionally, we stressed that one husband's actions had "violated his specific duty 'not to pursue any course of action that would defeat the wife's right to receive a portion of the husband's full net disposable retired or retainer pay.'" *Id.* In light of these facts, we commented that "[w]here the spouse is not deprived of property which has already been awarded pursuant to the decree, the equities are much less compelling to find that the separation incentive constitutes marital property. If the [out-of-state cases] had not found the incentive payments to be marital property, the husband would have been permitted to unilaterally decrease his obligation and the amount his former spouse would have received." *Id.*

Unlike the spouses in the out-of-state cases, the husband in *McClure* had no choice about retirement, and did not do so to evade a pension obligation. Instead, he had only two choices—to voluntarily separate and receive VSI payments, or to be involuntarily terminated. In the latter event, he would receive a maximum single lump-sum payment that was substantially less than the VSI payments. By taking the first option, the husband ensured a higher, more stable income, from which child support and spousal payments could be awarded. *Id.*

In a later decision, we distinguished *McClure*, noting that the "voluntary separation" in that case was, in fact, involuntary. *Denny v. Denny* (Apr. 12, 1996), Greene App. No. 95–CA–87, unreported, at 2, 1996 WL 173397. As a result, in *Denny*, we found that the trial court did not abuse its discretion in awarding a spouse a proportionate interest in any VSI payments which might be received in the future. In this regard, we said that "there is no evidence that Mr. Denny has been given, or is likely to be given, an ultimatum to leave military service before becoming entitled to retirement benefits. At the time of the divorce, Mr. Denny had completed fifteen years of military service. If he should elect to leave military service before becoming entitled to retirement benefits and to receive VSI benefits instead, those VSI benefits would be in lieu of the retirement benefits to which he would otherwise become entitled." *Id.*

Thus, our decisions do not specifically address the question of what should happen when a party is under court order to protect an ex-spouse's retirement

interest, but voluntarily takes unilateral action to destroy the interest. Nonetheless, we think they strongly indicate that such interference cannot be tolerated.

 Based on the above discussion, we believe trial courts may properly retain jurisdiction over a non-vested military pension. However, a favorable finding on this point is not required in order for us to affirm the trial court's decision. Specifically, whether jurisdiction is reserved or not, the trial court retains the power to enforce its orders. In this case, the order allowing Collins to purge himself of contempt did not modify the original order, but was an appropriate way of enforcing the obligations in the divorce decree. Accordingly, the trial court did not abuse its discretion by finding Collins in contempt or by specifying a means of purging the contempt.

 Collins's second argument in support of his assignment of error is that the trial court's order improperly created a condition of involuntary servitude and violated the Thirteenth Amendment to the United States Constitution. The basis for claiming "involuntary servitude" is that the order allegedly required Collins to remain in the military to protect his ex-wife's retirement interest. We reject this argument for two reasons. First, the only order that could arguably be read as "imposing servitude" is the original judgment and decree of divorce, which gave each spouse a proportionate interest in the other's retirement and imposed a duty on each side to protect that interest. However, as we said earlier, the lack of appeal from the divorce judgment and decree bars re-litigation of the content of the decree. As a result, we cannot consider whether the original order improperly imposed a duty on Collins to remain in the military.

As an additional point, the contempt order could not have imposed servitude on Collins, since he had already left the Air Force at the time of the order. Mr. Collins elected to leave the military and to forfeit his retirement—a choice he was obviously free to make. Having made that choice, however, he was obligated to reimburse his ex-spouse for the financial consequences of the decision. Therefore, instead of forcing Collins to remain in the military, the contempt order simply allowed him to reap the consequences of his voluntary act. We see nothing arbitrary, unreasonable, or unconscionable in such a result. See, *e.g.,* *Zavakos v. Zavakos Enterprises, Inc.* (1989), 63 Ohio App.3d 100, 106–107, 577 N.E.2d 1170, 1174–1175.

In light of the preceding discussion, the single assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF, J., concurs.

GRADY, J., dissents.

GRADY, Presiding Judge, dissenting.

I respectfully dissent from the decision of the majority. Defendant-appellant Ralph Collins's failure to re-enlist in the United States Air Force may have operated to prevent plaintiff-appellee, Selena Collins, from eventually receiving the share of defendant-appellant's military pension that the court had awarded her. However, the court abused its discretion when, upon a finding of contempt, it ordered defendant-appellant to pay plaintiff-appellee the value of the share that was "lost" to her because of his failure to re-enlist.

Domestic relations courts possess full equitable powers and jurisdiction appropriate to the determination of domestic relations matters. R.C. 3105.011. A court that grants a decree of divorce must equitably divide the marital property of the parties. R.C. 3105.171(B). Per divisions (A)(3)(a)(i) and (ii) of that section, marital property means all real and personal property and any interest therein that either of the spouses *currently* owns or *currently* has and that was acquired by either or both during the marriage, including retirement benefits. Because the property or the interest therein must be owned *currently*, the court may not make a property division award that is contingent on the happening of a future event. *Zimmie v. Zimmie* (1984), 11 Ohio St.3d 94, 11 OBR 396, 464 N.E.2d 142.

In its decree of divorce, the court awarded each of the parties the same "fractional share of the retirement benefits of the other" from their respective military pensions. It is undisputed that when the award was made defendant-appellant Ralph Collins' right to a military pension had not vested. It was, therefore, a mere expectancy, one that was contingent on his completion of additional years of service. Defendant-appellant then had no enforceable interest, legal or equitable, in the pension or property. Therefore, and because his expectation of a pension was not property or an interest therein which defendant-appellant currently *had or owned* at the time of divorce, it was not subject to division as marital property. *Zimmie, supra.* The trial court erred when it awarded a fractional share of whatever military pension benefit defendant-appellant might someday receive to plaintiff-appellee as her share of the parties' marital property. *Id.*

Plaintiff-appellant did not prosecute the trial court's error on an appeal from the decree of divorce. Therefore, he has waived his right to re-litigate that error here. His waiver of his appellate rights in that regard does not resolve the question presented, however. That question is whether, upon plaintiff-appellee's subsequent prosecution of a contempt claim and the finding of contempt that it made, the court should have ordered defendant-appellant to compensate plaintiff-

appellee for her loss, when it was one resulting from an order to which she was not entitled and which the court should not have made.

The court possessed the necessary jurisdiction of the parties and of the subject-matter when it entered the property division order. Defendant-appellant was not entitled to violate its terms because it was beyond the court's authority to issue. *Walker v. Birmingham* (1967), 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210. Unless and until it was reversed on appeal, his failure to obey the order is punishable as contempt, both civil and criminal. *United States v. United Mine Workers of Am.* (1947), 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884.

Whether a contempt is classified as civil or criminal depends on its dominant purpose. If the dominant purpose is to punish the contemnor for disobedience of the court's order, the adjudication of contempt is criminal. If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication is civil. *In re Martorano* (1975), 464 Pa. 66, 346 A.2d 22.

Judicial sanctions in civil contempt may be employed to coerce the contemnor to perform an act that the court ordered. It may also take the form of compensation, forcing the contemnor to indemnify the plaintiff for any loss caused by the contemnor's conduct. *United States v. United Mine Workers of America, supra; McDonald's Corp. v. Victory Investments* (C.A.3, 1984), 727 F.2d 82. A money judgment is the only alternative when the court can no longer secure for the plaintiff the conduct to which he is entitled. Remedies, American Casebook Series (1985 Ed.), at 128.

Violations of an order are punishable as criminal contempt even though the order is later set aside on appeal. *United States v. United Mine Workers of America, supra:*

"It does not follow, of course, that simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order. The right to remedial relief falls with an injunction which events prove was erroneously issued, and a fortiori when the injunction or restraining order was beyond the jurisdiction of the court." (Citations and footnote omitted.) *Id.*, 330 U.S. at 294–295, 67 S.Ct. at 696–697, 91 L.Ed. at 913.

Stated otherwise, "[t]he general rule is that whether a contempt judgment survives the avoidance of an underlying order depends on the nature of the contempt decree. If the contempt is criminal it stands; if it is civil it falls." *Latrobe Steel Co. v. United Steelworkers of Am.* (C.A.3, 1976), 545 F.2d 1336, 1342. Consistent with that doctrine, "a private party should not profit as the

result of an order to which a court determines, in retrospect, he was never entitled." *Id.* at 1346.

In the context of *United States v. United Mine Workers of America, supra,* an order is "beyond the jurisdiction" of the court when the court lacked authority to grant the relief which the order involves.

"The term jurisdiction originally included only the right to hear and determine concerning the subject matter in a particular case. But the modern tendency has been to broaden that meaning * * * A court may have jurisdiction of the cause of action and of the parties, but it may lack the authority or power to act in the case except in a particular way. Under such circumstances, it is now generally held that the court had no jurisdiction." *Fortenbury v. Los Angeles Superior Court* (1940), 16 Cal.2d 405, 407–408, 106 P.2d 411, 412.

In Ohio, the jurisdiction of the courts of common pleas and their divisions is fixed by legislative enactment. Section 4, Article IV, Ohio Constitution. Thus the trial court's authority to divide marital property is governed by R.C. 3105.171. If the court makes a property division order that is manifestly contrary to or exceeds the authority it is granted, the order is beyond the jurisdiction of the court. A party who disobeys the order may be punished for criminal contempt. The adverse party affected by the contempt may not, however, profit by way of a fine imposed in a simultaneous proceeding for civil contempt based on the same violation. *United States v. United Mine Workers of America, supra; Latrobe Steel Co. v. United Steelworkers of America, supra.*

The trial court exceeded its jurisdiction when it divided as marital property defendant-appellant's expectancy in a pension, which per *Zimmie, supra,* was a mere contingent right and not property or an interest therein that either party currently owned or had. R.C. 3105.171(A)(3)(a). Therefore, the court abused its discretion when subsequently it awarded plaintiff-appellee a money judgment to compensate her for her lost share in an action for contempt that she prosecuted, allowing her to profit as the result of an order to which she was not entitled.

Two additional factors should also be addressed.

First, before either the compensatory or coercive aspects of a court's civil contempt power can be brought into play, there must first have been "an operative command capable of 'enforcement.'" *Internatl. Longshoremen's Assn. Local 1291 v. Philadelphia Marine Trade Assn.* (1967), 389 U.S. 64, 74, 88 S.Ct. 201, 206, 19 L.Ed.2d 236, 244. Even if the court's property division award is found to imply a command that defendant-appellant re-enlist in the Air Force and remain a member until his pension vests, that form of command is one not capable of enforcement. "Relief of that character has always been regarded as impracticable, and as an invasion of one's natural liberty, involuntary servitude

being prohibited by the Constitution." *Lundoff–Bicknell Co. v. Smith* (1927), 24 Ohio App. 294, 301, 156 N.E. 243, 245.

Second, and with reference to a suggestion in Judge Brogan's opinion, I do not agree that the court could have retained jurisdiction to order defendant-appellant to pay plaintiff-appellee the value of the share of his pension that she never will receive because of his failure to re-enlist. Such an award would constitute a modification of the prior property division award. Modification of property division awards is expressly prohibited by R.C. 3105.171(I). Once marital property is allocated, awards are final and the court does not have continuing jurisdiction to modify an award in the nature of a property settlement. *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413.

The court could not have retained jurisdiction to modify its prior property division order as it did. That is not to say that the court could not have subsequently ordered division of a pension that it properly divided by way of a qualified domestic relations order, or "QDRO." Such an order is in aid of relief that the court has granted. *Tarbert v. Tarbert* (Sept. 27, 1996), Clark App. No. 96–CA–0036, unreported, 1996 WL 555039. It is not a modification of that relief, and cannot be. *Id.* Further, where relief is not properly granted, as it was not here when the court divided the parties' pensions, a QDRO cannot correct the error involved.

The court ordered defendant-appellant to compensate plaintiff-appellee as a way to purge himself of the criminal contempt which the court found, for which he was ordered to serve thirty days in jail. The criminal contempt might stand if the court finds, as it apparently did, that defendant-appellant's purpose when he failed to re-enlist was to prevent the relief that the court had ordered. *In re Davis* (1991), 77 Ohio App.3d 257, 602 N.E.2d 270. Further, the criminal contempt survives any infirmities in the underlying order. *United States v. United Mine Workers of America, supra.* However, for the reasons I have explained, the compensation alternative that the court ordered should be vacated. I would reverse, in part, to do that.

This is not to say that plaintiff-appellee is wholly without recourse. The trial court also divided her expected military pension. In view of defendant-appellant's conduct, it may no longer be equitable that the court's order dividing plaintiff-appellee's pension have prospective effect. Plaintiff-appellee may seek to vacate the court's order pursuant to Civ.R. 60(B)(4).

I would reverse and modify the trial court's order, the compensation alternative that the court ordered as a method by that defendant-appellant may purge himself of the contempt that the court found.