Kinkade, J.
 

 We have here two cases with the same parties plaintiff and defendant, same subject-matter, and same relief sought, in one case by injunction and in the other by prohibition. The plaintiff is the sheriff of Cuyahoga county. The defendants are all the judges of the common pleas court of that county. The common pleas court promulgated a set of rules for the government and management by the sheriff of the county jail and the prisoners therein confined. The sheriff began an action in the common pleas court against the judges, praying for a writ of injunction restraining the judges from enforcing such of the rules as related to the diet of the prisoners, on the ground that the court possessed no jurisdiction over the subject-matter, that the rules were unreasonable and impracticable, and that the action of the court was an abuse of judicial discretion. A temporary restraining order was issued. The judges filed a joint answer, admitting certain facts stated in the petition, and admitting that they intended to
 
 *420
 
 enforce the rules. The sheriff demurred to the answer. The court held that the demurrer challenged the sufficiency of the petition, that the petition did not state a cause of action against the defendants, and dismissed the action. The sheriff appealed. The Court of Appeals also dismissed the action. The sheriff then filed a motion in this court, requesting that an order be issued requiring the Court of Appeals to certify its record for review. Pending these proceedings as stated, the sheriff commenced an action in prohibition in the Court of Appeals, seeking same relief against the judges. Counsel say they began this second action fearing this court might hold that injunction was not their proper remedy. The Court of Appeals denied the writ of prohibition prayed for, and dismissed the action. Thereupon the sheriff filed in this court, as a matter of right, his petition in error, seeking a reversal of the judgment of the Court of Appeals. The contention of the sheriff is that he has the sole and exclusive power to determine all questions pertaining to the feeding of the prisoners confined in the jail, and that the rules promulgated by the court, in so far as they pertain to the diet of the prisoners, are void for want of jurisdiction over the subject-matter, and, furthermore, that the rules are unreasonable, impracticable, and result from a clear abuse of judicial discretion. The judges contend that they have full and complete jurisdiction and authority to establish the rules that were adopted, and that the law is mandatory that they shall promulgate the rules as they have done.
 

 
 *421
 
 This conflict of authority may be determined by reference to a few sections of the General Code. Section 3157 provides: “The sheriff shall have charge of the jail of the county, and all persons confined there, keep them safely, attend to the jail, and govern and regulate it according to the rules and regulations prescribed by the court of common pleas.”
 

 Section 3153 provides: “The sheriff shall cause to be entered in a suitable book, called the jail register, and kept in the office of the jailer, and delivered to his successor in office the following:” and then follow nine matters to be covered by the register so kept, the seventh of which is the operation of the rules prescribed by the common pleas court.
 

 Section 3162 provides: “The court of common pleas shall prescribe rules for the regulation and government of the jail of the county, not inconsistent with the law, upon the following subjects:” and then follow nine specified matters that are to be covered by the rule.
 

 And then the section proceeds: “Tenth — Other regulations necessary to promote the welfare of the persons” [prisoners].
 

 Section 13574 provides: “The grand jurors shall visit the county jail, once during such term of court, examine its state and condition, and inquire into the discipline and. treatment of the prisoners, their habits, diet and accommodations. They shall report to the court, in writing, whether the rules prescribed by such court have been faithfully kept and observed and whether the law for
 
 *422
 
 the regulation of county jails has been violated, stating the particulars of such violations.”
 

 The foregoing provisions are in no sense ambiguous. They do not need or admit of any strained interpretation. They only need to be read, applying thereto the plain common moaning of the words employed. We have no difficulty in reaching the conclusion that the Legislature clearly and definitely intended by these provisions to commit to the court of common pleas the entire matter of promulgating rules for the government of the county jail and of the persons therein confined, including the matter of diet, to be carried out by the sheriff and his deputies and employes. The law does not sustain the claim of the sheriff that he may treat such rules made by the court as void and determine for himself all questions pertaining to the diet of prisoners. On the contrary, it is the plain duty of the sheriff to obey and enforce and to command his subordinates to obey and enforce the rules established by the court.
 

 There is another issue — a financial issue — clearly outlined in these actions, without which it may well be doubted whether either of the actions would ever have been commenced.
 

 Section 2850, among other things, provides as follows: “The sheriff shall be allowed by the county commissioners not less than forty-five nor more than seventy-five cents per day for keeping and feeding prisoners in jail. * * * The sheriff shall furnish at the expense of the county, to all prisoners confined in jail, * * * fuel, soap, disinfectants, bed, clothing, washing and nursing
 
 *423
 
 when required, and other necessaries as the court in its rules shall designate.”
 

 By Section 2996 the salary of the sheriff cannot, exceed $6,000.
 

 Section 2997 provides as follows: “In addition to the compensation and salary herein provided, the county commissioners shall make allowances quarterly to each sheriff for keeping and feeding prisoners, as provided by law * *
 

 The sheriff insists that, if he can feed the prisoners for less than 45 cents per day per prisoner, then he may appropriate to his own use the difference between the minimum fixed and the actual cost to the sheriff of the food furnished to the prisoners. This claim was wholly denied and rejected by both the trial and the appellate court. By the maximum rate of 75 cents per day per prisoner and the minimum rate of 45 cents per day, fixed by Section 2850, General Code, above quoted, the Legislature clearly intended to prevent both extravagant overfeeding and niggardly underfeeding of the prisoners. Both limitations are in accord with the general welfare of the prisoners, and the sheriff is wholly without authority to violate either limitation. It is said that, because of the provisions in Section 2997, above quoted, that these allowances “for keeping and feeding prisoners” are to be made “in addition to the compensation and salary herein provided,” we must assume that the Legislature was thereby making a further allowance to the sheriff as an additional compensation, which in effect, though not in name, increases his salary, although Section 2996 limits the salary
 
 *424
 
 to $6,000. This construction does great violence to the terms employed by the Legislature, and is not tenable. Some stress is laid upon the word “keeping,” as used in connection with the word “feeding,” and, as we understand counsel, their claim is that the words “keeping and feeding prisoners” as used in Section 2997 contemplate some further service by the sheriff outside of the matter of feeding the prisoners, for the performing of which the Legislature intended to compensate the sheriff. If this is true, it seems more than strange that the Legislature did not define the service covered by the word “keeping” and fix definitely the amount of the compensation therefor, which the sheriff was authorized to carve out of the feeding fund allowed to him by the county commissioners to reimburse him for expenditures in that behalf. The first duty of the sheriff is to keep the prisoners committed to jail until they are legally released. If he does not keep them, he will have no prisoners to feed. The term employed, “in addition to the compensation and salary herein provided,” is only another way (and perhaps an unnecessary addition) included in the section in order to make it more definitely appear that the sheriff is not required to use any portion of his salary or income to purchase food for the prisoners. We cannot adopt as correct the views of counsel that this word “keeping,” as used, extends the scope of Section 2997 so as to justify additional compensation to the sheriff. If the sheriff by underfeeding may save some portion of the minimum, 45 cents, for himself, why may he
 
 *425
 
 not render all bills for feeding at the maximum, 75 cents, regardless of Ms actual disbursements for food, and thereby secure from the county a much larger reimbursing return, from which he may carve out a much larger amount for Ms own personal profit?
 

 Public money may be used only for public purposes and never for private gain. The methods employed to direct public money from public channels into private channels are sometimes very ingenious, but they do not affect the fundamental principle involved.
 

 If the sheriff has a right to make personal profit out of the feeding fund allowed to him by the county commissioners and paid to him out of the county treasury, then, if he had but one prisoner for but one day, he might purchase either the maximum or the minimum, in value, of food for that prisoner for that day, and then consume one-half, or three-fourths, or even the whole, of the purchase himself, and yet be reimbursed by the county for the feeding of the prisoner. The proposition is not worthy of serious consideration.
 

 Motion overruled. Judgment affirmed.
 

 Marshall, C. J., Matthias, Day, Allen and Robinson, JJ., concur.
 

 Jones, J., not participating.