**BENJAMIN et, Appellees, v. COLUMBUS (City) et, Appellants.**
**FERGUSON et, Appellees, v. COLUMBUS (City) et, Appellants.**

Ohio Appeals, Second District, Franklin County.

Nos. 5529, 5530. Decided February 7, 1957.

McLeskey & McLeskey, Owen B. Sherwood, Columbus, for appellees.
Chalmers P. Wylie, City Atty., Russell Leach, Chief Counsel, Columbus, for appellants.

(FESS and DEEDS, JJ, of the Sixth District; HUNSICKER, J, of the Ninth District, sitting by designation in the Second District.)

## OPINION
By FESS, J.

Appeals on questions of law and fact from a judgment entered in Ferguson v. Columbus, No. 187,169 in the Common Pleas Court, permanently enjoining the defendant from the enforcement of Ordinances numbered 156-53, 157-53 and 1615-54. Benjamin v. Columbus, No. 191,975, was consolidated with the Ferguson case in the trial court and upon the appeals, the two cases are consolidated herein for retrial. The Ferguson case attacks the constitutionality of Ordinances 156-53 and 157-53, whereas the Benjamin case relates to Ordinance 1615-54. By stipulation, it is agreed that each action includes the three Ordinances in question.

A digest of the averments of the petition as well as the salient provisions of the 1953 ordinances are reported in **Ferguson v. Columbus. 70 Abs 277,** and are not repeated herein. The answer in the Ferguson case admits that the City threatens to enforce the provisions of the ordinances against plaintiffs and merchants with whom plaintiffs have contracts.

On July 19, 1954, the Common Pleas Court, based upon a well-considered opinion, in which it concluded that the 1953 ordinances were not violative of constitutional provisions, entered judgment for the

defendant upon the pleadings. Upon an appeal on questions of law, this judgment was reversed, essentially on the ground that issues of fact were presented upon the pleadings that required a trial. **Ferguson v. Columbus, 70 Abs 277.** In its opinion, the Court of Appeals made certain suggestions with respect to the licensing and seizure provisions of the 1953 ordinances, which are carried in the headnotes of its opinion.[1]

In its opinion, the Court of Appeals concludes "that the ordinances, given full force and effect, if the averments of the petition are proven, do not authorize, nor purport to empower, the defendant officers with the right to confiscate the machines, or to arrest and imprison the merchants with whom plaintiffs have contracts." The Court also says that "it is not necessary to decide the issues of the constitutionality of the ordinances except in so far as is required to determine if, upon any theory, the sustaining of the motion for judgment on the pleadings was proper," and that "we do not hold the ordinance is invalid because it characterizes as a nuisance the operation of a machine therein described 'which tends to encourage gambling.' It is the method of making determination of this essential of a nuisance as a basis of a seizure of the machine which we cannot support."

After the Court of Appeals decision in the Ferguson case was announced, the defendant, no doubt as a result of such decision, enacted Ordinance 1615-54 on December 7, 1954. This ordinance provides that whoever shall have in his possession, custody or control any table game or device commonly known as "pin game," "pin-ball game" or "marble game," the operation, use or play of which is controlled by placing therein any coin, plate, disk, plug, key or other token, or by the payment of a fee, shall be guilty of a misdemeanor, etc. The purpose of this supplementary ordinance is rather ineptly stated in the preamble.[2]

These ordinances tacked onto the chapter of the Columbus Code

---

1. We are advised that the headnotes of the opinion of the Second District Court of Appeals appearing in the Ohio Law Abstract were neither prepared nor approved by the Court.

2. "Whereas, the operation of pinball machines and similar machines involving chance or skill or reward encourages gaming and the general disorder incident thereto, and is a threat or menace to the peace and morals of the community, and

"Whereas, even the so-called amusement-only pinball machines are so constructed as to be almost identical in appearance and operation to certain gambling devices per se; and

"Whereas, even the vast majority of such so-called amusement-only devices are readily convertible to gambling devices; and

"Whereas, the operation of even amusement-only pinball machines has become and now constitutes a nuisance in that it encourages a false sense of values, idling, and loitering; and

"Whereas, an emergency exists in that such pinball machines are now generally absent from the city, but will return unless immediately prohibited; and for the immediate preservation of the public peace and safety; now, therefore:" etc.

relating to gambling, are complex, contradictory, and bear the mark of having been hastily drawn and considered without that degree of care and clarity of expression which should attend legislative enactments. We concur in the suggestions made in the **Ferguson case, 70 Abs 288,** that the ordinances should be shortened and codified into simple, concise and clear phraseology.

In March, 1955, the Benjamin case was filed, attacking the 1954 ordinance. On May 9, 1956, the Common Pleas Court found that a municipality has no authority to prohibit the use and operation of pinball machines which are merely designed and utilized for amusement purposes only. **73 Abs 143.** A decree was entered permanently enjoining the defendant from interfering with the ownership, etc., of pin games by the plaintiff and any merchant with whom plaintiffs have contracts for the operation of such games so long as they are not used for gambling.[3]

A century ago an eminent jurist declared that an application for injunction is addressed to the sound discretion of the court. Spencer, J., in Commercial Bank v Bowman (1855) 1 Handy, 246. This discretion reposed in a court of equity is to be exercised in the light of all circumstances surrounding the application for relief by way of the injunctive process.

The Council of Columbus, in the exercise of its legislative function pursuant to its inherent police power and as conferred upon it by the Ohio Constitution, has declared that pin games (not gaming devices per se) are detrimental to public morals in that they tend to encourage gambling, register odds or a score, or are adapted, or may be readily converted into a machine, device or instrument that is adapted for use in violation of other provisions of the chapter relating to gambling.[4]

The ordinance also characterizes the operation of such a machine a nuisance. We are aware that the Supreme Court of Ohio has said that the mere declaration in an ordinance that it is enacted to protect public safety, health or morals will not render it valid under the police powers. **Youngstown v. Kahn Bros. Bldg. Co., 112 Oh St 654.** And if a municipal ordinance has no reasonable relation to the morals, health and safety of the people of a municipality, it is an unauthorized exercise of the police power. Youngstown v. Kahn Bros. etc., supra; 37 Amer. Juris., 927.

But the ordinances in the instant case not only contain a general declaration that pin games are detrimental to public morals, but also the specific grounds which in the opinion of the legislative body makes such games detrimental. Council may have recognized the ancient adages that "a foles bolt is soone shotte" (Taverner, 1539), and "a fool and his money is soon parted" (Howell, 1645). Council in its wisdom may have concluded that mechanical whirr accompanied by the glitter of

---

3. Although *Westerhaus Co., Inc.,* v. *Cincinnati, 165 Oh St 327,* was not announced until June 11, 1956, free-play machines are excluded from the injunction.

4. See *70 Abs 284,* wherein Sec. 29.38 is quoted in full.

the flickering lights engendered by the erratic peregrination of the metallic balls recording mounting scores appeal to the gambling instinct and cupidity of the moronic wastrels who may play the machines for amusement only. Council has concluded that there are devices in addition to "one-arm bandits" which entice the gullible to gleefully fiddle away their time and substance in parting with their nickels and dimes.

An ordinance of a municipality can not be overthrown by a court unless such legislation is clearly arbitrary, unreasonable or unrelated to the public health, morals, safety, or welfare of the community. It is not for the courts to determine the wisdom of the legislation, but its constitutional validity, and a court may not substitute its judgment for that of the legislative body as to the necessity for or wisdom of the legislation. Stary v. Brooklyn, 162 Oh St 120. 134. Furthermore, a court will not substitute its judgment for the discretion of municipal legislative authorities, who are presumed to be familiar with the local needs and conditions, so long as the provisions do not clearly transcend the limits of reasonableness. 28 O. Jur. 498.[5]

Over objection, parties plaintiff engaged in the leasing of pin games, testified that their non-free play machines were operated for amusement only and did not tend to encourage gambling or loitering. This opinion evidence, given by witnesses interested in the outcome of the litigaton, does not meet, much less overcome, the legislative declaration, presumptively true. that such machines tend to encourage gambling and loitering. These interested witnesses also testified that it would take up to four or five days for an expert mechanic to convert a machine to free play.[6]

There is also evidence that the conversion can be made in a much shorter period. But. accepting the exaggerated period at face value, we cannot hold that the Council was wrong in declaring that such machines are readily convertible. A presumption of legality and good faith attends the adoption of an ordinance until it be clearly established that the Council has exceeded its powers, or that it acted in bad faith. or has abused its discretion. 28 O. Jur. 501. Although we might agree with the opinion expressed by the operators and disagree with that of the Council, we may not substitute our opinion for that of the legislative body.

Incident to obtaining the relief herein sought. the plaintiffs are also confronted with another insurmountable presumption. The cardinal

5. "The proposition is well established that ordinances of a municipality must not be unreasonable or arbitrary; but it is equally well-settled that courts should not substitute their judgment for the legislative discretion and do not pass upon the wisdom or expediency of an ordinance." *Dayton* v. *Kresge Co.*, 114 Oh St 624, 629, citing *Allion* v. *Toledo*, 99 Oh St 416.

6. It is of some significance that these witnesses were unfamiliar with the interior mechanism of the machines and that the plaintiffs did not elect to introduce the testimony of expert mechanics who must have been available, regarding the manner of conversion and the time and skill required,

rule in the interpretation of ordinances is to ascertain, declare and give effect to the legislative intent, which is to be gathered from the provisions of the enactment and the apparent purpose of the law as applied to the evil at which it is aimed. **Toledo v. Wagner, 57 Oh Ap 160.** It is repeatedly held in Ohio that a clear incompatibility between a law and the Constitution must exist before the judiciary is justified in holding the law unconstitutional, and the party asserting unconstitutionality must clearly show it. **10 O. Jur. 2d, p. 248.** A legislative function will not be interfered with by the courts unless such power is exercised in an arbitrary or unreasonable manner in violation of constitutional guaranties, and the facts to justify interference with the sound discretion of the legislative body must clearly appear from the evidence, and, if debatable, the legislation will be upheld. **Cleveland Trust Co. v. Brooklyn, 92 Oh Ap 351.**

Plaintiffs seek to draw a distinction between the power of a municipality to "prohibit" and its power to "regulate," as provided in **Sec. 3, Art. XVIII of the Constitution.** They apparently concede that the power to regulate includes the power to prohibit that which is inherently evil, but contend that the power to regulate does not include the power to prohibit that which is not inherently evil or is legitimate. **10 O. Jur. 2nd, 506.** If a business is not harmful, the prosecution of it can not be lawfully prohibited to one who will conduct such business in a lawful manner. Thus it has been held that the following businesses do not bear such a relation to the public health, welfare, safety, or morals as to justify their restrictive regulation: commercial photographing, selling flowers, watchmaking, and painting, paperhanging, plastering and mason work **(10 O. Jur. 2nd, 504)**; also slaughtering of chickens **(Simon v. Cleveland Heights, 46 Oh Ap 234)**; street sales of ice cream, soft drinks, candies, etc. **(Frecker v. Dayton, 153 Oh St 14)**; **Frecker v. Zanesville (CP) 35 O. O. 234; Schul v. King (CP) 35 O. O. 238**; trafficking in amusement tickets **(Heller v. Cleveland [CP] 25 O. O. 106, 37 Abs 545)**; and weighing and measuring **(Cincinnati v. Broadwell, 3 O. Dec. Repr. 286)**. Cf **10 O. Jur. 2nd, 507.** But these authorities do not go to the extent of holding that a municipality may not prohibit that which has evil potentialities, such as is declared under the ordinances in question. Cf. **Myers v. Cincinnati, 128 Oh St 235, 238.**[7]

7. "The constitutional provisions relied upon by plaintiff in error protect the citizen in his right to pursue any lawful business, but they do not prohibit legislation intended to control pursuits which because of their nature have injurious and harmful possibilities. Even if the slot machine involved in his case is manufactured and intended for lawful operation, its potentiality and design is such that it may be easily put to lawful use. The regulation or prohibition of such a mechanism need not be postponed until such event occurs."

"The city has the right to determine whether the exhibition, maintenance and operation of slot machines as defined in the ordinance are prejudicial to the public good." Myers v. Cincinnati, supra.

As in the instant case, the defendant contended that the particular slot

Furthermore, that which is legitimate may be prohibited incident to the regulation of an evil. For example: ninety-nine percent of uninspected meat may be perfectly wholesome and its sale legitimate, but in the interest of protecting the consuming public from the one percent which may be unwholesome and deleterious, the sale of wholesome uninspected meat may be prohibited. **Dayton v. Jacobs, 120 Oh St 225;** Cf. **Cleveland v. Terrill, 149 Oh St 532; Crown v. Cleveland, 125 Oh St 455** (sale of corn sugar). As stated in the Crown case, drastic regulations of private business have been repeatedly held to be constitutional, citing **Marmet v. State, 45 Oh St 63; Phillips v. State, 77 Oh St 214; Sanning v. Cincinnati, 81 Oh St 142; Renner Brewing Co. v. Rolland, 96 Oh St 432; State v. Norval Hotel Co., 103 Oh St 361; Hoisman v. Thomas, 112 Oh St 397; Dunn v. State, 122 Oh St 431.** See also dissenting opinion of Taft, J., in **Frecker v. Dayton, 153 Oh St 14, 23.** It is readily observed that incident to the exercise of the power to regulate, otherwise legitimate activities which do not comply with the regulations may be prohibited.

There is a clear cut distinction between that class of articles which have been declared unlawful and a public nuisance by statute or by ordinance and may be seized and disposed of forthwith and the class of property which is lawful in its ordinary and proper use and becomes contraband only when used in an unlawful manner and where there is a determination to that effect in a court of competent jurisdiction. **Grieb v. Dept. of Liquor Control, 153 Oh St 77, 81,** citing Wagner v. Upshur, 95 Md. 519, 52 A. 509; **Edson v. Crangle, 62 Oh St 49, 56 N. E. 647; State v. French, 71 Oh St 186, 202, 73 N. E. 216; In re Estate of Weisenberg, 147 Oh St 152, 70 N. E. 2nd, 269.**

There is likewise a distinction between a pin-ball game which has been declared unlawful and a nuisance and the so-called "fish net" cases referred to in the Grieb case.

Notwithstanding the constitutional safeguard of religious freedom, conduct of business pursuits, including sports, may be validly prohibited on Sunday.[8]

Since regulation, as the term is used in the Constitution, includes prohibition, in order to grant relief we must find that the prohibitory regulation herein involved has no reasonable relationship to the public

---

machine was for amusement only. The statement of facts indicates that the machine was used for gambling but the import of the decision is that even though it be used for amusement only, the city could prohibit it on account of its potentiality.

8. "The prohibition of secular business on Sunday is advocated on the ground that by it the general welfare is advanced, labor protected, and the moral and physical well-being of society promoted. The legislature has so considered it, and the judiciary cannot say that the legislature was mistaken, and, therefore, the act is unconstitutional, without passing out of its legitimate sphere, and assuming a right to supervise the exercise of legislative discretion in matters of mere expediency." *State* v. *Powell, 58 Oh St 324, 345.*

morals or public welfare. It is to be borne in mind that the burden is not upon the city to sustain the constitutionality, but the burden is on the plaintiff to clearly show that enactments are unconstituional. It is our conclusion that the plaintiffs have failed to show that such prohibitory regulations are unreasonable and arbitrary or that they have no real or substantial relation to the morals or general welfare of the people of Columbus.

In its opinion in **Ferguson v. Columbus (1954), 70 Abs 277**, the court, without being required to do so, said that the power granted in the 1953 ordinance to police officers and licensing officials to determine that the operation of a pinball machine "tends to encourage" gambling is too broad and is a judicial power which cannot be delegated to enforcing or licensing officials. In our opinion this invalidity has now been removed by the enactment of Ordinance 1615-54, prescribing a standard for licensing and seizure of pinball machines, which the Council has declared tend to encourage gambling, register odds or scores, and are readily convertible to free play. Admittedly this conclusion is debatable, but the doubt must be resolved in favor of constitutional validity. As a general rule, a law which confers discretion on an executive officer or board, without establishing any standards for guidance, is a delegation of legislative power and unconstitutional; but when the discretion to be exercised relates to a police regulation for the protection of the public morals, welfare, safety or general welfare, and it is impossible or impracticable to provide such standards, and to do so would defeat the legislative object sought to be accomplished, the legislation conferring such discretion may be valid and constitutional without such restrictions or limitations. **7th Par. Syllabus in Matx v. Curtis Cartage Co., 132 Oh St 271.**

In the light of the foregoing observations, the ordinances are not in violation of the Fourteenth Amendment. Murphy v. California, 225 U. S., 623.

In conclusion, plaintiffs in each case have failed to show:

1. A clear incompatibility between the ordinances and the Ohio Constitution,

2. That the ordinances bear no real and substantial relation to the public health, safety, morals or general welfare of the public, or are arbitrary or unreasonable.

3. That plaintiffs are entitled to injunctive relief.

The petition in each case should be dismissed at plaintiff's costs. Judgment for defendant in each case and causes remanded to the Common Pleas Court for execution for costs. See journal entry to be submitted to Hunsicker, P. J., for approval.

DEEDS and HUNSICKER, JJ, concur.