**Nathaniel ROBERTS, Individually and on Behalf of the Certified Class, et al., Plaintiff(s),**

v.

**COUNTY OF MAHONING, et al., Defendant(s).**

**No. 4:03 CV 2329.**

United States District Court, N.D. Ohio, Eastern Division.

May 25, 2006.

---

Paul J. Gains, Prosecutor, Gina D. Bricker, Assistant Prosecutor, Youngstown, OH, for Relator.

Attorney Iris Torres Guglucello, Law Director, Youngstown, OH, for Respondent.

## ORDER

DOWD, District Judge.

On March 10, 2005, this Court issued a Memorandum Opinion (Doc. No. 93, 2005 WL 5569487, 495 F.Supp.2d 670), including Findings of Fact and Conclusions of Law. This Court found that the Class members (1) are being denied their constitutional rights not to be punished without due process of law and/or not to be subjected to cruel and unusual punishment, and (2) are being denied their constitutionally-protected right of access to the courts.

This Court found the remedy in this case is subject to the provisions of 18 U.S.C. § 3626(a). This Court appointed Vincent Nathan as Special Master (Doc. No. 108, 2005 WL 5569488, 495 F.Supp.2d 693) consistent with the provisions of 18 U.S.C. § 3626(f)(2)(A), (B) and (C). Recognizing that deference to defendants to develop a remedial plan in the first instance is consistent with the United States Supreme Court's decision in *Lewis v. Casey*, 518 U.S. 343, 362–63, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), this Court directed the Special Master to assist the parties, specifically the Defendants, in attempting to find a solution to the problems which created the unconstitutional conditions at the jail. The Special Master in his

Fourth Report (Doc. No. 132) formally recommended that the Defendants form a working group to develop a remedial plan to deal with the constitutional issues raised regarding the jail and to examine the justice system in Mahoning County to see how changes in the system could alleviate the overcrowding component of the unconstitutional conditions in the jail. There being no objection to this recommendation, this Court's Order of August 10, 2005 (Doc. No. 132) adopted the recommendations of the Special Master's Fourth Report. This Court's August 10, 2005 Order constituted an order for a less intrusive relief in compliance with 18 U.S.C. § 3626(a)(1) of the Prison Litigation Reform Act.

Pursuant to this Court's Order (Doc. No. 133), the Criminal Justice Working Group ("CJWG") was formed and began meeting in August of 2005. Over the next ten months, the CJWG met and made multiple reports of its progress. (*See*, Doc. Nos. 142, 154, 166 and 175). On May 1, 2006, the CJWG submitted its Final Report to this Court. (Doc. No. 191). This Court appreciates the great amount of effort and work that has gone into the formation of this final report and the CJWG's attempt to solve those problems outlined in the Memorandum Opinion of March 10, 2005. Further, the Defendants have reported that progress has been made toward resolving a number of the findings in that Memorandum Opinion including legal access, maintenance, outdoor recreation, and training. However, the central issue of population control to prevent future overcrowding remains unresolved.

By way of agreement between the Plaintiffs and Defendants, in May of 2005 the population at the Mahoning County Jail was limited to no more than 296 inmates during the remedial phase of this action. This Court recognized this agreement in its Order of April 7, 2005. (Doc. No. 117). Thereafter, due to the Common Pleas Court Ordered Release Mechanism ("Release Mechanism"), the population cap was implemented. *See* CJWG First Interim Report (Doc. No. 142, Exhibit G). After implementation of the Release Mechanism, the population crept from 296 to upwards of 400. During this interim period, the parties attempted to regain control of the population by implementing additional procedures. *See* CJWG Second Interim Report (Doc. No. 154, pp. 12–13 and Exhibit K). These procedures fell short, in part as a result of judicially imposed "Do Not Release" ("DNR") Orders by the misdemeanant, county, and common pleas courts for certain inmates who would have otherwise been released pursuant to provisions of the Release Mechanism. This left the Sheriff in a predicament of violating such DNR orders, the Common Pleas Court Ordered Release Mechanism, and/or the parties' agreed population limit in this case.

The Defendants reported that, on January 10, 2006, the Sheriff's Department released an inmate with a DNR Order issued by a Youngstown Municipal Court Judge who then sought to have the Sheriff held in contempt. Such action prompted the Defendants to file a writ of prohibition in the Seventh District Court of Appeals seeking to have the appellate court determine the jurisdiction of the lower courts to issue "Do Not Release" Orders in violation of the Mahoning County Common Pleas Court Ordered Release Mechanism. The Seventh District Court of Appeals granted the writ of prohibition on May 22, 2006 by a vote of 2 to 1.[1] The decision, favorable to the Defendants, gives the Sheriff the ability to control the population using the Common Pleas Court Ordered Release Mechanism and prohibits the individual

---

1. A copy of the Opinion and Dissent are attached hereto as Appendix 1.

misdemeanant courts from affecting the population with DNR orders. However, in a newspaper article in *The Vindicator*, dated May 23, 2006, counsel for the City of Youngstown indicated that the City was contemplating filing an appeal to the Ohio Supreme Court or seeking a writ of prohibition regarding the Emergency Release Mechanism.[2] Therefore, the possibility of a continuing challenge to the Sheriff's ability to control the population with the Common Pleas Court Release Mechanism remains troubling to the Court.[3]

In order to attempt to maintain a constitutional facility and remedy the population issue created by the DNRs, the Sheriff made the decision to open two additional pods. *See* CJWG Fourth Interim Report. (Doc. No. 175, Exhibit B). The Sheriff represented to this Court that these two additional pods are being run in the same constitutional fashion as the tower which was agreed to hold 296 inmates. Imperative to the issue of population control is staffing. However, due to the increasing jail population, in-service training has been delayed in 2006 in order to insure that adequate staffing levels are being properly maintained.

Defendants, through the CJWG, have attempted to implement a plan to deal with the overpopulation; but this plan remains dependent on factors beyond the parties' control. In order to maintain population levels, the Sheriff must have the ability to release inmates to prevent overcrowding based on his staffing levels available on any particular day. This requires a commitment from all common pleas, municipal, and county judges to maintain an agreed-upon population cap. But, to date, only

the Common Pleas and County Court Judges have agreed by Court Order to an Overcrowding Release Mechanism. *See* CJWG Final Report (Doc. No. 191, Exhibit E).

■ Since the Sheriff has redirected staff hired as relief for training in order to maintain security to open additional pods to accommodate the DNRs, at some point he will have to close pods and reduce the population to accomplish training. Thus, without a mechanism to release inmates to accomplish training and to maintain population caps based on the number of staff available to provide adequate staffing, the Defendants are unable to control the jail population and to prevent unconstitutional overcrowding.

As of May 5, 2006, the jail population stood at 463 inmates.[4] Consequently, this Court finds that it is unlikely that the plan to maintain constitutional population levels at the jail will be effective without some intervention by this Court in the form of a prisoner release mechanism.

■ Accordingly, this Court, in compliance with the Prison Litigation Reform Act of 1995 and the holding in *Lewis v. Casey*, 518 U.S. 343, 362–63, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), finds that the Defendants have been given an opportunity to correct the problem of jail overcrowding and have been unable to do so without further intervention by this Court.

It is hereby ordered, in accordance with 18 U.S.C. § 3626(a)(3)(D), that the matter of determining a prisoner release order be referred to a three-judge panel in due

2. A copy of the article, obtained from the newspaper's website, is attached as Appendix 2.

3. An editorial published on May 25, 2006 in *The Vindicator*, the major newspaper in Mahoning County, encouraged the City of

Youngstown to challenge the opinion taken by the majority in the prohibition action as set forth in Appendix 1. A copy of that editorial, clipped from the online digital version of the newspaper, is attached as Appendix 3.

4. *See* attached Appendix 4.

course in accordance with 28 U.S.C. § 2284.[5]

Notwithstanding this decision and pending the convening of a three-judge district court, this Court encourages the CJWG to continue its efforts to achieve a resolution of all issues in this lawsuit without further intervention by this Court.

IT IS SO ORDERED.

## APPENDIX 1

### STATE OF OHIO, MAHONING COUNTY

### IN THE COURT OF APPEALS

### SEVENTH DISTRICT

State of OHIO, ex rel. Randall A. WELLINGTON, Mahoning County Sheriff, Relator

vs.

Hon. Elizabeth A. KOBLY, Judge, Youngstown Municipal Court, Respondent.

Case No. 05–MA–228

Character of Proceedings:
Writ of Prohibition

Judgment: Writ of Prohibition Granted
Civ. R. 19 Motion Denied

APPEARANCES:

For Relator: Paul J. Gains, Prosecutor, Gina D. Bricker, Assistant Prosecutor, Youngstown, OH 44503

For Respondent: Iris Torres Guglucello, Law Director, Youngstown, OH 44503

Judges:

Hon. Gene Donofrio

Hon. Joseph J. Vukovich

Hon. Mary DeGenaro

Dated: May 22, 2006

## OPINION AND JOURNAL ENTRY

### PER CURIAM.

{¶ 1} Relator, Randall A. Wellington, Mahoning County Sheriff, has filed a Complaint for Writ of Prohibition with this Court against respondent, Hon. Elizabeth A. Kobly, Judge of the Youngstown Municipal Court.

{¶ 2} Relator, the Sheriff of Mahoning County, Ohio, along with the Mahoning County Commissioners, were sued in federal district court under Section 1983, Title 42, U.S.Code alleging that the Mahoning County Jail was unconstitutional due in part to overcrowding and inadequate staffing levels in *Roberts v. County of Mahoning*, 4:03 CV 2329. On March 10, 2005, the federal district court declared that conditions at the jail were unconstitutional.

{¶ 3} In order to bring the jail into constitutional compliance, the Mahoning County Common Pleas Court issued an order March 30, 2005, which put in place a new release mechanism for inmates based on the prioritizing of offenses.

{¶ 4} On November 29, 2005, respondent, a Youngstown Municipal Court judge, sentenced Ronald Tomlin (Tomlin) to seven days in the Mahoning County Jail on a conviction for domestic violence in *State v. Tomlin*, 15 CRB 2054. In a section of the journal entry of sentence captioned "Other orders," respondent specifically noted, "Sheriff not to release early." Tomlin was released from the jail that same day pursuant to the release mechanism adopted by the Mahoning County Common Pleas Court.

{¶ 5} The following day, on November 30, 2005, respondent ordered relator to appear and show cause why he should not

5. The responsibility to appoint a three-judge panel rests with the Chief Judge of the Sixth Circuit, Danny Boggs. Under the law, the three-judge panel must include at least one circuit judge. The Court is in the process of requesting Chief Judge Boggs to appoint the panel by Friday, June 30, 2006.

be held in contempt of court for releasing Tomlin in contravention of her "do not release early" order. The hearing was scheduled for December 28, 2005, in Youngstown Municipal Court.

{¶ 6} On December 23, 2005, relator filed this writ along with a contemporaneous motion for an expedited alternative writ. On December 27, 2005, this Court granted the motion and ordered that respondent be restrained from conducting the December 28, 2005 contempt hearing. Since that time, respondent has filed an answer and a motion to join an indispensable party, or in the alternative, a motion to dismiss. Relator filed a brief in opposition. Both parties filed joint stipulations on February 3, 2006. Additionally, both parties have filed motions for summary judgment. In essence, relator argues that the Mahoning County Common Pleas Court has exclusive jurisdiction over the Sheriff's operation of the jail, as manifested by implementation of the release mechanism, and that the respondent lacks jurisdiction to order relator to violate that order since that order derived from a superior tribunal. In contrast, respondent argues that it has exclusive jurisdiction to enter a sentencing order with a "do not release early" stipulation and cite relator in contempt for failing to execute that order.

## STANDARD OF REVIEW

{¶ 7} Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.* (1976)[1978], 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 8} Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.* (1995), 104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 9} In order to be entitled to a writ of prohibition, relator must establish that (1) respondent is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denial of the writ will cause injury for which no other remedy in the ordinary course of law exists. *State ex rel. Goldberg v. Mahoning Cty. Probate Court* (2001), 93 Ohio St.3d 160, 161–162, 753 N.E.2d 192.

{¶ 10} Prohibition will not lie unless it clearly appears that the court has no jurisdiction over the cause which it is attempting to adjudicate or is about to exceed its jurisdiction. *State ex rel. Ellis v. McCabe* (1941), 138 Ohio St. 417, 20 O.O. 544, 35 N.E.2d 571, paragraph three of the syllabus.

{¶ 11} "The writ will not issue to prevent an erroneous judgment, or to serve the purpose of appeal, or to correct mistakes of the lower court in deciding questions within its jurisdiction." *State ex rel. Sparto v. Darke Cty. Juvenile Court* (1950), 153 Ohio St. 64, 65, 41 O.O. 133, 90 N.E.2d 598.

{¶ 12} In her motion for summary judgment, respondent advances three main arguments. First, respondent argues that the writ should not be granted because she had exclusive jurisdiction to enter the sentencing order with a "do not release early" stipulation and to cite relator in contempt

for failing to execute the order. Respondent goes to great lengths to outline the statutory scheme which details a municipal court's jurisdiction over matters in general and, with more specificity as it relates to this case, sentencing misdemeanants in her court.

{¶ 13} Second, respondent argues that the writ should not be granted because she did not patently and unambiguously lack jurisdiction in this matter and that relator has other remedies at law. As mentioned above, generally, in order to be entitled to a writ of prohibition, one of the elements relator must establish is that denial of the writ will cause injury for which no other remedy in the ordinary course of law exists. *Goldberg*, 93 Ohio St.3d at 161–162, 753 N.E.2d 192. However, as acknowledged by respondent, there is an exception to this requirement where the tribunal against whom the writ is sought patently and unambiguously lacks jurisdiction to exercise the power sought to be prohibited. *State ex rel. Rogers v. McGee Brown* (1997), 80 Ohio St.3d 408, 410, 686 N.E.2d 1126.

{¶ 14} Respondent maintains that she had jurisdiction to sentence Tomlin and has jurisdiction to hold contempt proceedings to enforce that order. As a result, respondent concludes that relator can raise the issue of her jurisdiction as a defense at any stage of the pending contempt proceedings or during any appeal of an order issued therefrom.

{¶ 15} Respondent's first two main arguments can readily be resolved before addressing her third main argument which goes to the larger and more relevant issue at hand here. As to her first argument, relator does not take issue with nor is there any dispute that respondent has the requisite jurisdiction to sentence misdemeanants that come before her in her court. As to her second argument, it's

understood that respondent has the power to hold persons in contempt of her orders.

{¶ 16} Turning to the three elements for a writ of prohibition to issue, the first requirement for the issuance of a writ of prohibition is that respondent is about to exercise judicial or quasi-judicial power. Respondent sentenced Tomlin to seven days in the county jail with a "do not release early" stipulation and to commence on November 29, 2005. Tomlin was released later that same day as a result of the Mahoning County Common Pleas Court's ordered release mechanism. On November 30, 2005, respondent attempted to exercise judicial power when she ordered relator to appear before her in Youngstown Municipal Court and show cause why he should not be held in contempt for releasing Tomlin early (i.e., prior to the expiration of his sentence). Consequently, relator has established the first requirement for the issuance of a writ of prohibition.

{¶ 17} The second requirement for the issuance of a writ of prohibition is that the exercise of that power is unauthorized by law. Respondent argues that the writ should not be granted because neither the Mahoning County Common Pleas Court nor relator had the authority to divest her of jurisdiction or to release prisoners sentenced in her court. Relator argues that respondent patently and unambiguously lacks jurisdiction to order him to violate a superseding order of the common pleas court made in accordance with R.C. 341.02.

{¶ 18} Common pleas courts are courts of general jurisdiction. *First Natl. Bank v. Smith* (1921), 102 Ohio St. 120, 130 N.E. 502, paragraph one of the syllabus; *State ex rel. Houk v. Court of Common Pleas* (1977), 50 Ohio St.2d 333, 334–335, 4 O.O.3d 475, 364 N.E.2d 277. "Municipal courts are creatures of statute and have limited jurisdiction." *State v. Cowan*, 101

Ohio St.3d 372, 805 N.E.2d 1085, 2004–Ohio–1583, at ¶ 11.

{¶ 19} R.C. 341.02 provides, in relevant part:

{¶ 20} "The sheriff or jail administrator shall prepare written operational policies and procedures and prisoner rules of conduct, and maintain the records prescribed by these policies and procedures in accordance with the minimum standards for jails in Ohio promulgated by the department of rehabilitation and correction.

{¶ 21} "The court of common pleas shall review the jail's operational policies and procedures and prisoner rules of conduct. If the court approves the policies, procedures, and rules of conduct, they shall be adopted."

{¶ 22} In *State ex rel. Kohler v. Powell* (1926), 115 Ohio St. 418, 154 N.E. 340, cited by relator, the Ohio Supreme Court noted the common pleas court's exclusive authority to regulate control of a county jail by a sheriff. Specifically, *Kohler* dealt with control over the diet of the jail inmates. The Court examined the analogous general code provision which provided the same authority as contained in R.C. 341.02. The Court stated:

{¶ 23} "The foregoing provisions are in no sense ambiguous. They do not need or admit of any strained interpretation. They only need to be read, applying thereto the plain common meaning of the words employed. We have no difficulty in reaching the conclusion that the Legislature clearly and definitely intended by these provisions to commit to the court of common pleas the entire matter of promulgating rules for the government of the county jail and of the persons therein confined, including the matter of diet, to be carried out by the sheriff and his deputies and employes [sic]. The law does not sustain the claim of the sheriff that he may treat such rules made by the court as void and determine for himself all questions pertaining to the diet of prisoners. On the contrary, it is the plain duty of the sheriff to obey and enforce and to command his subordinates to obey and enforce the rules established by the court." Id., 115 Ohio St. at 422, 154 N.E. 340.

{¶ 24} In its syllabus, the Court concluded that G.C. 3162 (predecessor section to R.C. 341.02) "confers upon the common pleas court full, complete, and exclusive authority to promulgate rules and regulations for the management and control by the sheriff of the county jail and the persons confined therein[.]"

{¶ 25} Respondent argues that R.C. 341.02 does not give the common pleas court authority to modify her sentencing order. However, the Mahoning County Common Pleas Court order implementing the release mechanism does not modify respondent's sentencing order. The release mechanism allows relator to furlough inmates until such time as there is room in the jail for those individuals to be brought back to serve their sentences.

{¶ 26} Respondent also argues that R.C. 341.02 cannot be construed to give relator or the common pleas court the authority to order a release mechanism because R.C. 341.12 provides that the sheriff shall convey prisoners to other jails if there is not sufficient space.

{¶ 27} R.C. 341.12 provides, in part:

{¶ 28} "In a county not having a sufficient jail or staff, the sheriff shall convey any person charged with the commission of an offense, sentenced to imprisonment in the county jail, or in custody upon civil process, to a jail in any county which the sheriff considers most convenient and secure."

{¶ 29} "[A]ll statutes which relate to the same general subject matter must be read

*in pari materia.* See *Maxfield v. Brooks* (1924), 110 Ohio St..566, 144 N.E. 725; *State, ex rel. Bigelow, v. Butterfield* (1936) 132 Ohio St. 5, 6 O.O. 490, 4 N.E.2d 142. And, in reading such statutes *in pari materia,* and construing them together, this court must give such a reasonable construction as to give the proper force and effect to each and all such statutes. *Maxfield v. Brooks, supra.* The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections. See *Benjamin v. Columbus* (1957), 104 Ohio App. 293, 4 O.O.2d 439, 148 N.E.2d 695, affirmed (1957), 167 Ohio St. 103, 4 O.O.2d 113, 146 N.E.2d 854; *In re Hesse* (1915), 93 Ohio St. 230, 112 N.E. 511. All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. *State v. Glass* (1971), 27 Ohio App.2d 214, 56 O.O.2d 391, 273 N.E.2d 893; *State v. Hollenbacher* (1920), 101 Ohio St. 478, 129 N.E. 702. This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict. *Couts v. Rose* (1950), 152 Ohio St. 458, 40 O.O. 482, 90 N.E.2d 139." *Johnson's Markets, Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 35, 567 N.E.2d 1018, 1025.

{¶ 30} Applying these principles to the case at bar, although R.C. 341.12 would require the sheriff to convey inmates to other jails, that presupposes that there is no other common pleas court order giving him a mechanism to furlough inmates under· R.C. 341.02. That also presupposes that other counties are willing and able to accept inmates from Mahoning County and that Mahoning County is willing and able to afford it. The release mechanism ordered by the common pleas court provides a logical mechanism to furlough inmates until such time as there is room for them to serve the remainder of their sentences and to bring the jail into constitutional compliance.

{¶ 31} Additionally, we should note that under Title 7 of the Revised Code governing municipal corporations, cities have an alternative to sending their offenders to the county jail. R.C. 753.03 provides:

{¶ 32} "A municipal legislative authority may, by ordinance, provide for the keeping of persons convicted and sentenced for misdemeanors, during the term of their imprisonment, at such place as the legislative authority determines, provided that the place selected is in substantial compliance with the minimum standards for jails in Ohio promulgated by the department of rehabilitation and correction. The legislative authority may enter into a contract under section 9.06 of the Revised Code for the private operation and management of any municipal correctional facility, but only if the facility is used to house only misdemeanant inmates."

{¶ 33} In sum, we acknowledge a municipal court's authority to sentence misdemeanants that come before it. However, the General Assembly has conferred upon common pleas courts the exclusive authority "to promulgate rules and regulations for the management and control by the sheriff of the county jail and the persons confined therein." R.C. 341.02; *State ex rel. Kohler v. Powell* (1926), 115 Ohio St. 418, 154 N.E. 340, syllabus. Respondent can point to no such statutory or caselaw that gives a municipal court such specific identical authority. Therefore, under the circumstances of this case, the order of the Mahoning County Common Pleas Court takes precedence over respondent's sentencing order.

{¶ 34} Accordingly, this Court grants the writ of prohibition against respondent, Judge Kobly. Additionally, respondent's

Civ.R. 19 motion to join indispensable parties is denied.

{¶ 35} Costs assessed against respondent. The clerk is directed to serve upon the parties notice of this judgment and its date of entry upon the journal. Civ. R. 58(B).

VUKOVICH, J. concurs.

DEGENARO, J. dissents. See dissenting opinion.

/s/ Gene Donofrio
Gene Donofrio, Presiding Judge

/s/ Joseph J. Vukovich
Judge Joseph J. Vukovich

/s/ _____
Judge Mary DeGenaro

DEGENARO, J., dissenting.

The relator has asked us to grant a writ of prohibition 1) preventing the respondent from conducting a contempt hearing and 2) prohibiting the respondent from issuing further orders like the one the relator is currently accused of violating. The majority grants both forms of relief, but I must respectfully dissent from its decision. We cannot prohibit the respondent from exercising her lawful contempt powers, even if we believe that it is unlikely that the respondent will be able to find the relator in contempt. If the relator believed the respondent did not have the authority to issue the order in question, then he should have sought a writ of prohibition before he decided not to follow that order. Furthermore, we do not have jurisdiction to prohibit the respondent from making similar orders in future cases. Accordingly, we should grant summary judgment to the respondent and deny the relator's writ of prohibition.

In this case, the relator is accused of failing to follow one of the respondent's orders and the respondent seeks to hold the relator in contempt for this violation.

A court's power to enforce its own orders is one of its most basic powers since it is necessary to the exercise of the judicial function. *State ex rel. Turner, v. Albin* (1928), 118 Ohio St. 527, 161 N.E. 792, paragraph one of the syllabus. A court's contempt powers allow it to punish "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph one of the syllabus. Although a municipal court is a creature of statute, R.C. 1901.13(A)(1) gives it the authority to enforce its orders through contempt proceedings. See *State ex rel. Johnson v. County Court of Perry County* (1986), 25 Ohio St.3d 53, 54, 495 N.E.2d 16.

Ohio courts have long recognized the collateral bar rule, which forces people to obey court orders until the court issuing the order or a reviewing court says otherwise. See *State ex rel. Beil v. Dota* (1958), 168 Ohio St. 315, 319, 154 N.E.2d 634; *Petition for Green* (1961), 172 Ohio St. 269, 274, 175 N.E.2d 59; *Natl. Equity Title Agency, Inc. v. Rivera,* 147 Ohio App.3d 246, 770 N.E.2d 76, 2001–Ohio–7095; *In re Contempt of Court of White* (1978), 60 Ohio App.2d 62, 64–65, 395 N.E.2d 499; *Ohio Contractors Ass'n v. Local 894 of Intern. Hod Carriers', Bldg. and C.L. Union of America* (1959), 108 Ohio App. 395, 400, 162 N.E.2d 155. In other words, a person is not entitled to violate a court order because the party believes it was beyond the court's authority to issue. *Collins v. Collins* (2000), 139 Ohio App.3d 900, 908, 746 N.E.2d 201. This is especially true when the trial court seeks to hold someone in criminal contempt. *Citicasters Co. v. Stop 26 Riverbend, Inc.,* 7th Dist. No. 01 CA 99, 2002–Ohio–5197, at ¶ 41–53, 2002 WL 31163655, at *8–10. The only excep-

tion to this rule is when the order at issue is transparently invalid or only has a frivolous pretense to validity. *Rivera* at ¶ 2, citing *Walker v. Birmingham* (1967), 388 U.S. 307, 315, 87 S.Ct. 1824, 18 L.Ed.2d 1210.

In this case, the respondent's order was neither transparently invalid nor only had a frivolous pretense to validity. The respondent clearly had the authority to sentence Tomlin after he was convicted for domestic violence, a misdemeanor offense, in the respondent's court. R.C. 1901.20(A)(1); 2919.25. The respondent did not obviously lack the authority to order the Sheriff not to release Tomlin early, as discussed below. Accordingly, the relator was bound to follow the respondent's order and the respondent has the power to hold a contempt hearing if it believes the relator did not comply with its order.

The issues the majority raises in its opinion are all defenses to a contempt action, not reasons why the trial court lacks authority to enforce its own orders. For example, the majority noted the relator's claim that Tomlin was furloughed, rather than released, and that this did not violate the order. Whether an order has been violated is one of the central issues to be resolved in any contempt proceeding. We cannot prevent the trial court from holding a contempt hearing merely because we suspect that it cannot factually find the relator in contempt.

Likewise, the fact that the court of common pleas has issued a contradictory order does not divest the respondent of its ability to enforce its own order. Instead, this is good cause for not obeying the respondent's order which should be raised at a show cause hearing. There are no Ohio cases dealing with this issue directly but as a Kentucky court long ago explained in a case involving similar circumstances, when two courts have issued contradictory or-

ders, someone "should not be held in contempt in acting in disobedience to either of the courts. The error, if any, was not upon the part of the [person subject to the competing orders]." *Boone v. Riddle* (Ky. App.1905), 86 S.W. 978, 979. Thus, if the relator was acting in accordance with an order from the court of common pleas, then he should raise this as a defense within the contempt proceeding before the municipal court.

If the relator wished to challenge the validity of the trial court's order without subjecting himself to the possibility that he might be held in contempt, then he should have sought a writ of prohibition before he chose to disobey the respondent's order. We cannot eviscerate the respondent's ability to enforce its orders in an effort to excuse the relator's delay in protecting his rights.

Finally, we cannot grant relator's request that we prohibit the respondent from issuing any "do not release" orders in the future. A writ of prohibition only prohibits a court from proceeding where there is a case pending before that particular court and we cannot issue a writ of prohibition to prevent some future action that a court is not about to take. *Commercial Sav. Bank v. Wyandot County Court of Common Pleas* (1988), 35 Ohio St.3d 192, 194, 519 N.E.2d 647. We cannot enjoin the respondent from issuing this kind of order in the future because we do not have original jurisdiction in injunction. Id.

As stated above, relator has asked for two forms of relief and we cannot grant either of those. We cannot prohibit the respondent from holding a contempt hearing, even if we suspect that it cannot hold the relator in contempt for various fact-based reasons, and we cannot enjoin it from entering a particular type of order in the future. If the relator believes that the

respondent has issued an order which it does not have the authority to issue, then he should seek a writ of prohibition before he decides to ignore and violate the order. By seeking prohibition after he has violated the order, the relator's actions are too little, too late.

For these reasons, we should grant respondent's motion for summary judgment. Relator is not entitled to the writ of prohibition which he seeks.

/s/ Mary DeGenaro
MARY DeGENARO, JUDGE

### APPENDIX 2

**Court sides with sheriff**

Date                    May 23, 2006

*City and county officials will discuss a plan today to share county jail space.*

By DEBORA SHAULIS

VINDICATOR STAFF WRITER

YOUNGSTOWN—The 7th District Court of Appeals has ruled that municipal courts and common pleas courts aren't equals when it comes to managing the county jail and its inmates.

In a 2–1 opinion issued Monday, appellate judges granted a writ of prohibition as sought by Mahoning County Sheriff Randall A. Wellington against Judge Elizabeth A. Kobly of Youngstown Municipal Court.

That means Judge Kobly cannot order Wellington to attend a show-cause hearing that could have led to a contempt-of-court charge.

Ronald Tomlin of Youngstown, whom Judge Kobly sentenced last November to seven days in county jail for misdemeanor domestic violence, received emergency release despite the judge's order to the contrary. Wellington said the part of the judge's journal entry with her handwritten "do not release" instructions was not received by jail personnel.

The case also concerned the county's emergency release mechanism, which common pleas court judges devised to limit jail population. A federal judge declared the jail to be unconstitutional in March 2005 because of overcrowding and staffing shortages.

**How this is done**

Inmates who qualify, depending on the seriousness of their crimes, either serve time when jail space is available or have their sentences converted or suspended by judges.

Judge Kobly had argued that the release mechanism was modifying her sentence orders.

Appellate judges Gene Donofrio and Joseph Vukovich ruled otherwise. "The release mechanism ordered by the common pleas court provides a logical mechanism to furlough inmates until such time as there is room for them to serve the remainder of their sentences and to bring the jail into constitutional compliance," Judge Donofrio wrote in the majority opinion.

Furthermore, the General Assembly long ago gave common pleas courts exclusive authority over jail operations. There is "no such statutory or case law that gives a municipal court such specific identical authority," Judge Donofrio wrote.

In her dissenting opinion, Judge Mary DeGenaro said the appellate court shouldn't stop Judge Kobly "from exercising her lawful contempt powers, even if we believe that it is unlikely that [she] will be able to find [Wellington] in contempt."

County Prosecutor Paul J. Gains, who filed court motions on Wellington's behalf, said he wasn't surprised that the appeals court ruled in the county's favor.

"We are weighing our options at the moment," said Atty. Anthony J. Farris, the city's chief assistant prosecutor. The city could file an appeal with Ohio Supreme Court or seek a writ of prohibition regarding the emergency release mechanism, he said.

Neither path will need to be taken if the city and county can come to terms on jail bed allocations. That's supposed to be the topic of a meeting today between county officials and Mayor Jay Williams.

The county Criminal Justice Working Group has proposed reserving 96 beds for city prisoners at a rate of $25 per day, plus meals and medical expenses, and giving municipal judges the right to create their own release mechanism over the city's portion of the jail. The city says it will pay for defendants who are charged with breaking municipal ordinances but not state statutes.

"We would really like to work this out with the city," Gains said.

"We've never been adverse to an agreement," Farris said. "It's the terms that are at issue." Ssh

shaulis@vindy.com

© 2006 Vindy.com. All rights reserved. A service of The Vindicator. 103 Vindicator Square. Youngstown, OH 44503

APPENDIX 3

## HOW WE SEE IT

# Appeals court ruling doesn't address Judge Kobly's point

If the 2-1 ruling by the 7th District Court of Appeals stands, judges of the Youngstown Municipal Court will be at the mercy of their Common Pleas Court colleagues when it comes to the management of their inmates in the county jail.

Do judges Robert Douglas, Robert Milich and Elizabeth Kobly have a right to determine which of their prisoners should remain behind bars — even when an emergency release program is instituted due to jail overcrowding? We believe they do.

But the appeals court has concluded otherwise. Judges Gene Donofrio and Joseph Vukovich said in their majority opinion in a case involving Judge Kobly that the Ohio General Assembly long ago gave common pleas courts exclusive authority over jail operations.

Thus, Donofrio and Vukovich upheld the legality of an emergency release mechanism for county jail inmates ordered by the Mahoning County Common Pleas Court as a way of alleviating overcrowding.

In March 2005, U.S. District Court Judge David D. Dowd Jr. ruled that the overcrowding and understaffing at the jail violated inmates' constitutional rights. He issued directives to address the problems. The emergency release mechanism is one of the solutions developed by the common pleas judges.

It "provides a logical mechanism to furlough inmates until such time as there is room for them to serve the remainder of their sentences and to bring the jail into constitutional compliance," Donofrio and Vukovich wrote.

In addition, they blocked Judge Kobly from forcing Sheriff Randall Wellington to appear before her to explain why he released a prisoner she specifically wanted kept behind bars.

### Written order

The judge had made it clear in writing that Ronald A. Tomlin was not to be released from jail. Tomlin had been convicted of domestic violence and was sentenced to seven days behind bars. However, because of a paperwork foul up in the sheriff's department, the prisoner was released. After the sheriff found out that Tomlin had been freed in error, he ordered deputies to find him. He was rearrested and was returned to jail.

But Judge Kobly argues that what happened to Tomlin is indicative of the problems that are arising as a result of the emergency release policy. She contends that because municipal court judges hear misdemeanor cases only, the jail sentences they impose aren't given the same importance as those handed down by the common pleas court judges.

Kobly had wanted Wellington to not only answer her questions about Tomlin, but to discuss the larger issue of inmate management. She contends that the release mechanism is modifying her sentence orders.

Indeed, appeals court Judge Mary DeGenaro said in her dissent that Kobly should not be prohibited from "exercising her lawful contempt powers" even if the she were ultimately unable to find Sheriff Wellington in contempt.

And so the question: Should the municipal court let the appeals court's ruling stand, or should Kobly and her colleagues seek a definitive ruling from the Ohio Supreme Court?

We believe that it is appropriate for the city of Youngstown to test the constitutionality of the law passed by the Ohio General Assembly that, in effect, gives common pleas courts the power to interfere with the sentencing authority of lower court judges.

# APPENDIX 4

Mahoning County Sheriff's Department

Justice Center and MSJ Daily Inmate Count

| May 5, 2006 | Pod | Total Bunks | Current Count |
|---|---|---|---|
| Booking *** | A | 10 | 0 |
| Medical Housing | B | 4 | 1 |
| | C | 10 | 11 |
| Medical Housing Totals | | 14 | 12 |
| North Tower | F | 36 | 32 |
| | G | 36 | 27 |
| | H | 54 | 60 |
| | I | 6 | 6 |
| | N | 18 | 18 |
| | O | 18 | 15 |
| | P | 36 | 44 |
| | S | 57 | 59 |
| | T | 57 | 58 |
| North Tower Totals | | 318 | 319 |
| South Tower | D | 54 | 0 |
| | E | 6 | 0 |
| | J | 6 | 0 |
| | K | 30 | 0 |
| | L | 36 | 0 |
| | Q | 36 | 0 |
| | R | 57 | 66 |
| | U | 57 | 66 |
| South Tower Totals | | 282 | 132 |
| Minimum Security Jail | A | 24 | 0 |
| | B | 24 | 0 |
| | C | 24 | 0 |
| | D | 24 | 0 |
| Total MSJ | | 96 | 0 |

* * * Booking (12 hrs.) Rated Capacity 44
TOTAL INMATE POPULATION

| | |
|---|---|
| Booking | 0 |
| Medical Housing | 12 |
| North Tower | 319 |
| South Tower | 132 |
| Minimum Security Jail | 0 |
| TOTAL *** | 463 |

* * * Booking (12 hrs.) Rated Capacity 44